[File No. 6505.]

STATE OF NORTH DAKOTA Doing Business as the North Dakota
Mill & Elevator Association, Plaintiff, v. A. F. BONZER, JR.,
the State Bonding Fund of North Dakota and Oscar E. Erickson,
Commissioner of Insurance, Defendants,
and
NORTHERN AND DAKOTA TRUST COMPANY, a Corporation,
Intervener.

(279 N. W. 769.)

Opinion filed April 30, 1938.

*Francis Murphy,* attorney for plaintiff.

P. B. *Garberg,* Special Assistant Attorney General, and *W. J. Auslin,* Special Assistant Attorney General, for defendants.

*Pierce, Tenneson, Cupler & Stambaugh,* for intervener.

NUESSLE, J. This action was brought to recover from the State Bonding Fund on account of alleged breaches of duty on the part of the defendant Bonzer, as manager of the North Dakota Mill and Elevator Association. The Northern and Dakota Trust Company as a reinsurer under contract with the Bonding Fund, intervened. The case was brought to trial before the Honorable Daniel B. Holt, judge of the district court in and for the first judicial district without a jury. When the plaintiff proffered evidence in support of its case, the defendants and the intervener objected thereto on the ground that it appeared from the pleadings and the evidence as offered to that point that the plaintiff and the defendant State Bonding Fund were identical and, therefore, the suit could not be brought. The issue thus presented was argued and submitted. The court overruled the objection and denied a motion to dismiss the action upon the same grounds. The

intervener then moved that the question raised by the said objection and motion be certified to the Supreme Court for determination in accordance with the provisions of § 7849b1, 1925 Supplement to the Compiled Laws of North Dakota. The trial judge granted the motion and certified the question here. In his certificate he recited:

"That the trial judge, in the exercise of his sound discretion, considered that said questions will depend wholly upon the construction of the law applicable thereto, and was in doubt with regard to the proper construction or interpretation of such law, and further considered that the decision of said questions is vital and of great moment in said cause and will be determinative of the entire action, granted the intervener's motion to certify the same to the Supreme Court, and therefore does hereby certify to the Supreme Court of the State of North Dakota for determination the following question:

"Where a claim for loss to the State of North Dakota, doing business as North Dakota Mill and Elevator Association, through default in the duties of the Manager of the North Dakota Mill and Elevator Association, has been presented to the State Bonding Fund of the State of North Dakota, considered by the Audit Committee thereof and rejected, may the State of North Dakota, doing business as the North Dakota Mill and Elevator Association, maintain a suit upon such claim against such State Bonding Fund and Oscar E. Erickson, Commissioner of Insurance, as Manager thereof?" No question is raised as to the propriety of such certification.

The intervener and the defendants here contend that the action is brought by the state of North Dakota against the state of North Dakota, that is, that the same party is both plaintiff and defendant and therefore under the rule that the same person cannot be both plaintiff and defendant in the same cause the action must be dismissed. The plaintiff insists that even though the North Dakota Mill and Elevator Association be an arm and agency of the state for the accomplishment of a public purpose, and the State Bonding Fund of North Dakota a creature of the state, created for a similar purpose, neither of these agencies is the state of North Dakota; that each of them is a separate entity functioning in its separate and particular sphere and, therefore, the rule that one party cannot in one and the same action hold the mu-

tually inconsistent positions of plaintiff and defendant has no application.

The Mill and Elevator Association was created pursuant to the provisions of chapter 152, Session Laws 1919. It is now functioning pursuant to the provisions of chapter 193, Session Laws 1933, a re-enactment of the original statute as amended. It is an agency of the state, created to accomplish purposes that have been defined as public by the legislature. See § 1 of chapter 193, supra. The State Bonding Fund was created by chapter 62, Session Laws 1915. This statute was amended to its present form by chapter 158, Session Laws 1919, and the enactments now in force appear as §§ 200b1 et seq., of the 1925 Supplement.

Pursuant to § 200b1, supra, all officers, deputies and employes of the state or any of its subdivisions who are required by law to provide bonds may be bonded by the State Bonding Fund. This fund, designated as The State Bonding Fund, is created from the premiums paid by those agencies whose officers and employes are thus bonded and is held by the state treasurer. Claims against the same after allowance by the Bonding Fund's auditing board are paid from such fund. The moneys in the fund, however, are not state moneys but are held in trust by the state treasurer for the benefit and protection of those who, under the terms of the act, may become claimants under such fund. State ex rel. Linde v. Taylor, 33 N. D. 76, 156 N. W. 561, L.R.A.1918B, 156, Ann. Cas. 1918A, 583. The Bonding Fund act requires that all claims against the fund shall be filed with the commissioner of insurance, and if not presented within the time specified they shall not be allowed and paid. Where a claim duly presented is disallowed action may be begun in the courts to determine the validity thereof and enforce its payment. While the act in this respect is not as definite as it might be, the clear implication of §§ 200b9, 200b10 and 200b20, 1925 Supplement, is to this effect. Section 200b9 provides in so many words that claims must be presented within the time prescribed therein *or no action may be brought to enforce the same.* Section 200b10 expressly provides that *where an action is brought* against a defaulting officer because of injury arising from his default, the Bonding Fund may be joined as a party defendant. Section 200b20 makes it the duty of the attorney general to act as attorney for the commissioner in any

and all actions and proceedings to which the commissioner is a party on behalf of the State Bonding Fund.

In the instant case the action was brought against the defendant Bonzer on account of his alleged default. The Bonding Fund and the defendant Erickson, as commissioner of insurance, were joined pursuant to the provisions of this section. It appears that service was not had upon Bonzer. But this does not defeat the right of action against his co-defendant, the Bonding Fund. · Why Bonzer was not served does not appear but, as we view it, that fact is immaterial. We cannot believe that the legislature in enacting this statute intended that one injured through the default of an officer should be defeated of his right of recourse because of inability to serve that officer upon suit brought. As, for instance, in the case of the death of the officer or his departure from the jurisdiction before service of process could be made upon him. The original Bonding Fund act, chapter 194, Session Laws 1913, was declared unconstitutional (see State ex rel. Miller v. Taylor, 27 N. D. 77, 145 N. W. 425) by this court for the reason, among others, that there was no provision therein whereby the rights of claimants against the fund could be judicially determined. The present Bonding Fund act was thereafter enacted and in it were included the sections (absent before) above referred to relating to actions against the fund. Taking all of these things into consideration we are clear that the legislature intended that the Bonding Fund should be suable.

No question is raised here as to the right of the State Mill and Elevator Association to sue and, as we have held above, the defendant Bonding Fund may be sued. The general rule is as the defendants and intervener contend, that one person cannot in one and the same action hold the position both of plaintiff and defendant. And this rule is applicable whether the action is in contract or in tort but does not apply where according to the actual interests involved the case does not amount to an action by one party against himself. See 1 C. J. S. 1074; 1 C. J. 983; 20 R. C. L. p. 663. And the authorities also say that: "The rule, however, is a technical one, and in cases where it precludes the maintenance of an action at law relief may ordinarily be had in equity (Equity, ¶ 38, (21 C. J. p. 71, note 54)), and if resort cannot be had to equity and the party having a meritorious case would

otherwise be without remedy the rule will not be enforced even at law." 1 C. J. S. 1074.

Counsel for the intervener say that the reasons (and that both are applicable here) for the rule that one party cannot be both plaintiff and defendant in the same action are, first, that it is not the purpose of the courts to litigate matters where no actual contest exists; and, second, that it is contrary to public policy to permit the same party to control and dictate the policies of both sides of a suit. Conceding that these are the reasons that underlie the rule, nevertheless they do not exist here. In the first place there is an actual controversy. Though the Bonding Fund may be classed as an agency of the state, yet, as we have shown, the moneys in it are in fact not the property of the state but constitute a trust fund. The state has no interest in this fund other than to see it is safely guarded and conserved and that those for whose benefit it is created receive their just dues. The state and its subdivisions and agencies are clearly intended to be protected by the fund as well as private persons. When the question arises, as to whether there is a valid claim against the fund, that question must be determined in some manner. That is exactly the situation in the instant case. Mr. Bonzer was bonded by the fund. The Mill and Elevator Association claims to have been injured through his official dereliction. It seeks to recover for this injury. The fund denies the existence and validity of the association's claim. In the next place the same party does not control and dictate the policies of both sides in this action. The association and the fund are wholly different agencies and instrumentalities. The state, as such, has no voice in determining what claims shall be allowed against the fund. And if the state itself has a claim against the fund that is disallowed it has but one remedy—by suit, as in the instant case. And so the second reason assigned for the rule does not exist. On the other hand, there are practical grounds why an action such as the instant one should lie. With the diversity of purposes that are now sought to be accomplished by public agencies there is every reason why they should have the power to sue and be sued. Differences are bound to arise between them and those with whom they deal, whether private persons or public agencies. And when such differences do arise there should be some means of adjudicating them. The Bonding Fund is not a public fund but a trust fund

held by the state. It is created for the benefit of the state and its subdivisions as well as for private parties. And it must be safe-guarded and protected against the claims of the state as much and as well as against private claims. In any event, a sufficient answer to the contentions of the defendants and intervener is that the legislature has seen fit to provide that the fund shall be suable and has not seen fit to differentiate between it and other agencies of the state in this respect. Counties, cities, townships, and school districts are but agencies and instrumentalities of the state. They are political subdivisions, created for the purpose of exercising a part of the state's powers. Vail v. Amenia, 4 N. D. 239, 59 N. W. 1092; State ex rel. Linde v. Taylor, 33 N. D. 76, 156 N. W. 561, L.R.A.1918B, 156, Ann. Cas. 1918A, 583, supra; Hadler v. North West Agri. L. S. & Fair Asso. 61 N. D. 647, 239 N. W. 736. The Mill and Elevator Association is no more identical with the state than are these political subdivisions, if it can be said that it is as much so. On the other hand, the Bonding Fund is concerned with no governmental function. The books are replete with opinions in cases brought by counties, cities and other political subdivisions against each other and even against the state itself. Among these the following cases may be cited: Fargo v. Cass County, 35 N. D. 372, 160 N. W. 76; Traill County v. State, 42 N. D. 253, 172 N. W. 782; Harrison School Dist. v. Minot, 48 N. D. 1189, 189 N. W. 338; North Fargo v. Fargo, 49 N. D. 597, 192 N. W. 977; State v. Burleigh County, 55 N. D. 1, 212 N. W. 217; Stark County v. Dickinson, 56 N. D. 371, 217 N. W. 525; Morton County v. Burleigh County, 56 N. D. 737, 219 N. W. 303. And though we can see no reason why the rule on which the defendants and intervener rely should not be as well applicable in such actions as in the instant case, yet we know of no instance where it has been urged.

The defendants and intervener cite and rely upon the case of Globe & R. F. Ins. Co. v. Hines (C. C. A. 2d) 273 F. 774. In that case Hines as agent of the United States Railroad Administration, operated steam tug No. 27 and float No. 47. The two vessels collided and injury resulted. The plaintiff insurance company, having paid the resulting loss, claimed that negligence in the operation of one of the vessels was the cause of the collision, and as subrogee sought to recover from Hines on account thereof. The court held that Hines operated

both vessels and that accordingly the plaintiff as insurer having paid a loss on float No. 47 could not, as subrogee, recover against him as operator on account of the negligence of tug No. 27, since this would, in effect, be permitting him to sue himself for his own negligence. It seems to us that the case is not at all parallel with the instant case. There the parties and the interests were the same. Here they are not. In this connection, see Wylly v. McCarl (D. C.) 2 F. (2d) 897, where the court held that an individual officer of the Navy might mandamus himself as disbursing officer to pay his own salary. The court in stating the case said: "It is a petition for a writ of mandamus brought by a disbursing officer directed to himself to prevent himself from deducting from his own salary a sum which he had been ordered by the Comptroller General so to deduct, so that he may be ordered to command himself to pay himself the amount which he himself considers to be due himself." And the court granted the writ. See also The Majestice (D. C.) 73 F. 499.

Our conclusion is that the question certified must be answered in the affirmative.

CHRISTIANSON, Ch. J., and BURR and MORRIS, JJ., concur.