[File No. 6587.]

WILLIAM LANGER, Governor, et al., as Members of and Constituting the State Budget Board, Appellants, v. THE STATE OF NORTH DAKOTA, Doing Business as the Bank of North Dakota, et al., Respondents-Appellants.

(284 N. W. 238.)

132

Opinion filed January 28, 1939.    Rehearing denied February 20, 1939.

*A. C. Strutz,* Attorney General, and *C. F. Kelsch,* Assistant Attorney General, for appellants.

*Robert H. Bosard* and *Robert Birdzell,* for appellant Bank of North Dakota.

*A. M. Kuhfeld,* Assistant Attorney General, and *J. K. Murray,* for appellant Workmen's Compensation Bureau.

*Robert H. Bosard,* for defendants-appellants Erickson and Gray.

*Milton K. Higgins,* Assistant Attorney General, for appellant Board of Railroad Commissioners.

*John E. Williams,* for appellant Public Welfare Board.

*S. E. Ellsworth,* for respondent State Highway Commissioner.

*Horace C. Young,* amicus curiæ.

CHRISTIANSON, J. Plaintiffs brought this action for a declaratory judgment, pursuant to chapter 237, Laws 1923; Supp. 1925, §§ 7712-a1–7712a16. The plaintiffs are members of, and constitute, the state budget board, and the defendants are officers, members of boards and commissions, and industrial undertakings carried on by the state. The primary question in controversy is whether the defendants are required to furnish a statement of an estimate of the necessary expenditure under the provisions of Chapter 61, Laws 1915, as amended by Chapter 93, Laws 1929; 1925 Supp., §§ 710a1 et seq.

The law last cited was entitled (in part): "An Act Providing for the Preparation of the State Budget; Creating a State Budget Board, Prescribing Its Powers and Duties." Laws 1915, chap. 61. It established a state budget board, consisting of the Governor, the Chairman of the Appropriation Committees of the Senate and the House of Representatives, the state auditor, and the attorney general. The Governor is made chairman, and the state auditor is made secretary of the board. The law provides that the state auditor shall: "send to the head of each department of this state government, and to each officer, board, or commission, in charge of any educational, charitable, penal or other institution or undertaking, supported wholly or in part by appropriations from the state treasury, a suitable blank form to be filled out by such head of state department, officer, board or commission, with an itemized statement of the amount of money which such head of state department, officer, board or commission considers necessary for the proper maintenance, extension or improvement of the department, institution, or undertaking in his or their charge, during the two fiscal years next ensuing." § 710a3, 1925 Supp. to Comp. Laws of 1913. And it is made the duty of such head of state department, officer, board, or commission to "return said blanks properly filled out, on or before the first day of October of each year next preceding the session of the legis-

lative assembly, to the state auditor, together with such data and statements as may be necessary to fully and clearly explain the purposes and need of any appropriation which is requested by such head of state department, officer, board or commission." Supp. 1925, § 710a3. The law further provides that the state budget board shall meet at the State Capitol on the second Tuesday in November of each year next preceding the meeting of the legislative assembly, and that the state auditor shall then submit to the budget board the estimates required to be filed in his office "by the head of each state department and various officers, boards and commissions," and that "The board shall thereupon proceed to prepare estimates for a state budget of the amounts required to be appropriated by the state legislative assembly for the conduct of the business of the state in all its offices, institutions, departments and undertakings for the two fiscal years next ensuing. Before making up such estimates the board shall examine all statements and requests for appropriations presented to it. . . ." Supp. 1925, § 710a4. The law further provides that the budget board shall prepare and transmit its estimates to the legislative assembly, "together with such recommendations, reasons, and explanations with regard to said estimates as shall be deemed necessary by the budget board. The budget board shall, at the same time, transmit to the legislative assembly all statements, estimates, and requests, or copies thereof, which were filed with the state auditor by the officers, boards, and commissions as required by § 3 of this Act." Supp. 1925, § 710a4. The law, also, provides: "In connection with and as a part of the estimate transmitted by the budget board to the legislative assembly the said board shall transmit an estimate of the revenues of the state expected to be received during the two ensuing fiscal years and may make such recommendation with regard to the disposition of said revenue as it shall deem advisable and necessary to promote the welfare of the state." Supp. 1925, § 710a6.

It is alleged in the complaint in this case that the state auditor has furnished to each of the defendants a suitable blank form to be filled out by them in the manner provided by law, and for the return thereof to the state auditor, and that the said defendants have failed to do so. In the answers interposed by the several defendants, it is asserted that they and their respective offices, boards, commissions and undertakings

are not within the purview of the State Budget Board Law, and that they are not required to furnish such estimates.

It appears from the pleadings that the principal source of the controversy is an amendment to § 186 of the Constitution, adopted at the primary election held June 28th, 1938. So far as material here, that section as amended, reads:

"All public moneys, from whatever source derived, shall be paid over monthly by the public official, employee, agent, director, manager, board, bureau, or institution of the state receiving the same, to the state treasurer, and deposited by him to the credit of the state, and shall be paid out and disbursed only pursuant to appropriation first made by the legislature; provided, however, that there is hereby appropriated the necessary funds required in the financial transactions of the Bank of North Dakota, and required for the payment of losses, duly approved, payable from the State Hail Insurance Fund, State Bonding Fund, and State Fire and Tornado Fund, and required for the payment of compensation to injured employees or death claims, duly approved, payable from the Workmen's Compensation Fund, and required for authorized investments made by the Board of University and School Lands, and required for the financial operations of the State Mill and Elevator Association, and required for the payment of interest and principal of bonds and other fixed obligations of the state, and required for payments required by law to be paid to beneficiaries of the Teachers' Insurance and Retirement Fund, and required for refunds made under the provisions of the Retail Sales Tax Act, and the State Income Tax Law, and the State Gasoline Tax Law, and the Estate and Succession Tax Law, and the income of any state institution derived from permanent trust funds, and the funds allocated under the law to the State Highway Department and the various counties for the construction, reconstruction, and maintenance of public roads.

"This constitutional amendment shall not be construed to apply to fees and moneys received in connection with the licensing and organization of physicians and surgeons, pharmacists, dentists, osteopaths, optometrists, embalmers, barbers, lawyers, veterinarians, nurses, chiropractors, accountants, architects, hairdressers, chiropodists, and other similarly organized, licensed trades and professions; and this constitu-

tional amendment shall not be construed to amend or repeal existing laws or acts amendatory thereof concerning such fees and moneys."

The language employed makes it clear that one of the prime objects of the above quoted constitutional amendment is to require payment to the state treasurer of certain fees and exactions that under the practice theretofore prevailing have been retained by the officers, departments and bureaus in charge of the particular activity in the course of which such fees and exactions have been collected, and which have been expended at the discretion of such officers, departments and bureaus in carrying on their respective activities, without specific legislative appropriation. That is to say, under laws heretofore and now in force, in many instances, a certain tax, fee or exaction has been imposed with the proviso that the receipts be expended in carrying on the activity of the department by which they were collected, and with the further proviso that the balance remaining after deducting expenses (with no restrictions as to amount or character of such expense) be turned over to the state treasurer.

While some of the provisions of the constitutional amendment apparently are ambiguous and uncertain, no uncertainty seems to exist as to the purpose of the following provision: "All public moneys, from whatever source derived, shall be paid over monthly by the public official, employee, agent, director, manager, board, bureau, or institution of the state receiving the same, to the state treasurer, and deposited by him to the credit of the state, and shall be paid out and disbursed only pursuant to appropriation first made by the legislature."

Under this provision all fees and exactions (except those withdrawn or excepted from its operation by subsequent provisions in the Amendment) collected by any public official, or employee of the state, pursuant to law, must be paid into the state treasury, and the practice formerly prevailing of permitting the receipts from such fees or exactions to be retained and expended by the officer, department or bureau by whom they were collected, without appropriation, will be banned; and in all cases that fall within this provision (and that are not withdrawn or excepted by subsequent provisions of the Amendment) all fees, taxes or exactions collected for a state-wide public purpose by authority of law must be paid into the state treasury, and the legislative assembly

must make specific and direct appropriations of the amounts to be expended by the several officers, departments or commissions, and specify the purposes for which the same shall be expended, the same as has been, and is, done as regards the regular departments of the state government.

The budgets to be prepared and submitted by the plaintiff, budget board, are for the two fiscal years commencing July 1, 1939; and inasmuch as the provisions of § 186 of the constitutional amendment will, and do, apply to all expenditures for such two years, it will be within the powers and duties of the plaintiff, state budget board, to prepare and submit to the legislature the information which the law contemplates shall be submitted for each department, institution, or undertaking, which, under § 186 of the Constitution, as amended, will require a direct legislative appropriation to carry on its activities for, and during, such two fiscal years.

The state budget board was established by the legislative assembly in 1915. Laws 1915, chap. 61. Prior to that time it had been a common practice to maintain many continuing appropriations with the result that in addition to the specific appropriations made by the legislative assembly, there remained, from year to year, continuing appropriations (in some instances without specific limits) so that it was difficult to have a clear picture of the authorized expenditures of the state for any fiscal biennium. The legislative assembly, which convened in January, 1915, devoted much time to the study of state finances. Early in the session, a concurrent resolution was adopted providing for a joint committee of six, made up of the chairmen and two members of the appropriation committees from each of the two houses. This joint committee was given wide powers of inquiry, including the power to summon witnesses. House Journal, 1915, pp. 101, 102. The committee made several reports. House Journal, 1915, pp. 444, 808, 1750. It also introduced a number of bills which subsequently became law. House Journal, 1915, pp. 814, 815, 825, 826, 901, 902. Among the bills introduced by this committee were the general appropriation bill (wherein continuing appropriation laws were repealed (Laws 1915, p. 53), and the bill creating the State Budget Board. Laws 1915, chap. 61. In its final report to the legislative assembly, the joint committee said, in part: "We suggested, and the legislature has adopted, a law

creating a budget commission, whose duty it will be, prior to the next legislative session, to inquire into, more fully than time and opportunity has allowed us, as to the income and expenditure of the state, and to make suggestions along the same line as have been made by this committee. It will be the duty of that board to prepare forms that will bring out the true financial condition of each and every state institution and department. Each item of expenditure will be submitted to that board. A balance sheet of each institution will be required so that the covering up or the disregard of a deficit can no longer be withheld from the legislative body." House Journal 1915, p. 1751.

The trial court found, and, according to the record submitted on this appeal, so far as concerns the answering defendants,—it found correctly, that the state auditor sent to each of the defendants the blank provided by the State Budget Board Law, and that all of the defendants have failed to fill in the blank and to return the same, or to supply the requested information. It also appears that this failure is based upon the proposition that they are not required to do so under the terms of the State Budget Law. In short, it appears that there is a controversy between the plaintiffs, members of the state budget board, and the defendants over the question as to whether it is or it is not the duty of the defendants to furnish to the state auditor (secretary of the state budget board) for the use of the state budget board, the requested statement. The question arises whether, upon this state of facts, there is a controversy between the plaintiffs and any, or all, of the defendants which may properly be determined by the district court and by this court under the Declaratory Judgments Act.

. The Uniform Declaratory Judgments Act was enacted in this state in 1923, and has remained in force without change. Laws 1923, chap. 237; Supp. 1925, §§ 7712a1–7712a16.

The act provides that courts of record in this state "shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed;" and that "no action or proceeding shall be open to objection on the grounds that a declaratory judgment or decree is prayed for." Supp. 1925, § 7712a1. It applies to persons "whose rights, status or other legal relations are affected by a statute," and provides that they "may have determined any question of construction . . . arising under the . . . statute . . . and obtain a

declaration of rights, status or other legal relation thereunder." Supp. 1925, § 7712a2. The act requires that "when declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration" (Supp. 1925, § 7712a11), and that "all orders, judgments and decrees under this act may be reviewed as other orders, judgments and decrees" (Supp. 1925, § 7712a7). The act "is declared to be remedial; its purpose to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered." Supp. 1925, § 7712a12.

The Declaratory Judgments Act is intended to provide a method whereby parties to a justiciable controversy may have such controversy determined by a court in advance of any invasion of rights, or breach of obligation. Thompson v. Chilton Co. 236 Ala. 142, 181 So. 701; Green v. Inter-Ocean Casualty Co. 203 N. C. 767, 167 S. E. 38; Sigal v. Wise, 114 Conn. 297, 158 A. 891, 893; Miller v. Currie, 208 Wis. 199, 242 N. W. 570, 572. It is intended to relieve litigants of the rule that no rights may be judicially adjudged until a right has been violated (American Nat. Bank & T. Co. v. Kushner, 162 Va. 378, 174 S. E. 777) and to authorize judicial action in actual controversies where such action formerly was not available. Holly Sugar Corp. v. Fritzler, 42 Wyo. 446, 296 P. 206.

But an action or proceeding for a declaratory judgment must involve an actual controversy of a justiciable character, between parties having adverse interests. No action or proceeding lies under the Declaratory Judgments Act to obtain a decision which is merely advisory, or which merely determines abstract questions. County Bd. of Edu. v. Borgen, 192 Minn. 512, 257 N. W. 92; Heller v. Shapiro, 208 Wis. 310, 242 N. W. 174, 87 A.L.R. 1201; 16 Am. Jur. 282, 283, Declaratory Judgments; 1 C. J. S. p. 1024; Electric Bond & Share Co. v. Securities & Exch. Commission, 303 U. S. 419, 82 L. ed. 936, 58 S. Ct. 678, 115 A.L.R. 105.

"The requisite precedent facts or conditions which the courts generally hold must exist in order that declaratory relief may be obtained may be summarized as follows: (1) there must exist a justiciable controversy; that is to say, a controversy in which a claim of right is as-

serted against one who has an interest in contesting it; (2) the controversy must be between persons whose interests are adverse; (3) the party seeking declaratory relief must have a legal interest in the controversy, that is to say, a legally protectible interest; and (4) the issue must be ripe for judicial determination. Borchard, Declaratory Judgments, pp. 26–57." State ex rel. La Follette v. Dammann, 220 Wis. 17, 264 N. W. 627, 103 A.L.R. 1089.

In this case no question has been raised by any of the parties as to the right of the plaintiffs to maintain this action, or as to the sufficiency of the facts, pleaded and proven, to establish a cause of action for a declaratory judgment. However, it goes without saying, litigants cannot by consent, either passive or express, dispense with necessary parties; or confer upon a person, who does not have a sufficient interest in a controversy to entitle him to bring suit, the right to sue; or transform a controversy that is not justiciable into one that is. Adams v. Walla Walla, 196 Wash. 268, 82 P. (2d) 584. Therefore, the first question which presents itself is: May the plaintiffs here maintain this action? The question must be answered in the affirmative.

The state auditor is made secretary of the state budget board, and required to submit to the heads of the state departments, and to the officers, boards or commissions in charge of state institutions or undertakings, appropriate blanks on which the information which the law contemplates shall be submitted to, and made available for the use of, the state budget board may be furnished; and the law provides that "such head of state department, officer, board or commission shall return said blanks properly filled out." The duty thus imposed to fill out and return the blank is an official duty,—one which arises by virtue of the office occupied by the person that the law says shall fill out and return the blank. It is true the law requires the statement to be returned to the state auditor, but the statements are for the use of the members of the state budget board, to enable them to perform the duties imposed upon them by the law. The state auditor is secretary of the state budget board, and in requiring him to send out the blanks, and in providing that they shall be returned to him, and by him submitted to the state budget board, the law merely recognizes and follows the procedure usually employed as regards boards—namely, that reports made to, or for the use of, a board shall be filed with the secretary thereof. The state-

ments prescribed by the State Budget Board Law are given to the state auditor as secretary of the state budget board.

Here the statements have been duly requested under the provisions of the State Budget Board Law, and the defendants have failed to furnish them. The failure or refusal of the defendants is based upon the proposition that they are not within the provisions of the State Budget Law. The plaintiffs, on the other hand, claim that the defendants are, and plaintiffs insist that in order to enable them to discharge their duties as members of the state budget board, it is necessary that the defendants be required to comply with the statute and furnish the statements. There is, therefore, a controversy as to the respective rights and duties of the plaintiffs and the defendants under the law.

The provisions of the law relating to the establishment of the state budget board, confer upon that board duties of great importance to the state. Obviously, the members of the state budget board will be hampered in the performance of their duties if the persons who, under the terms of the State Budget Board Law, are required to prepare and submit for the information and use of the state budget board the statements prescribed by that law, fail to furnish such statements.

The members of the state budget board, in their official capacity, as such, have a very direct interest in the required statements being furnished. Under our laws "every action must be prosecuted in the name of the real parties in interest" (Comp. Laws 1913, § 7395); "all persons having an interest in the subject of the action and in obtaining the relief demanded may be joined as plaintiffs" (Comp. Laws 1913, § 7403); and a proceeding in mandamus may be "prosecuted by one having a special interest in the proceeding" without joining the state as plaintiff (Comp. Laws 1913, § 8433). The Declaratory Judgments Act has enlarged rather than restricted the right of persons interested in a controversy to bring suit. 16 Am. Jur. 328, Declaratory Judgments; Borchard, Declaratory Judgments, pp. 178, 322, 567, 568. The act specifically provides that: "When declaratory relief is sought, all persons shall be made parties who have, or claim, any interest which would be affected by the declaration," Supp. 1925, § 7712a11.

When declaratory relief is sought, which involves the validity or construction of a statute and affects the powers and duties of public officers, such officers should be made parties to the action or proceeding in

which the relief is sought. Re Van Syckle, 15 N. J. Mis. R. 145, 118 N. J. L. 578, 188 A. 915, 194 A. 284. See also Hall v. United States Nat. Bank, 128 Neb. 254, 258 N. W. 403.

The relationship of plaintiffs, as members of the state budget board, to the defendants, the nature of the controversy between them, and the interest of the plaintiffs in the performance by the defendants of their official duties in question here, are such as give to the plaintiffs the right to apply for judicial relief.

"Public officers ordinarily need not be authorized by statute to bring suit, having implied authority to do so coextensive with their public trusts and duties." 46 C. J. p. 1046.

In Stevens v. Lake George & M. R. R. Co. 82 Mich. 426, 46 N. W. 730, the court said: "It is the general rule that public officers need not be expressly authorized by statute to bring suit, but that their capacity to sue is commensurate with their public trusts and duties."

Corpus Juris (38 C. J. p. 836) says: "State officers or boards may bring mandamus to compel the performance of official duties . . . the performance of which is necessary to enable them to perform their own duties." State ex rel. Board of Education v. Cavendish, 81 W. Va. 266, 94 S. E. 149; Russell v. Ayer, 120 N. C. 180, 27 S. E. 133, 37 L.R.A. 246.

The reported cases bear ample evidence that public officers and boards frequently have resorted to an action for declaratory relief to obtain determination of a controversy with some other public officer or board, involving questions of official power or duty.

In his work on Declaratory Judgments, Professor Borchard says: "Administrative boards and officials frequently sue each other for a declaration of their respective rights and duties. It is evident that such officials require only adjudication, not coercion, in order to establish and perform their statutory duties, and that the simplest procedure is the best. Hence, the common use of the declaration in such controversies." Borchard, Declaratory Judgments, pp. 607, 609.

We are of the opinion that the plaintiffs have the right to maintain this action.

The fact that the defendants failed to furnish such statements at the time required, or in time to enable the budget board to consider the same, or before the time the budget board was required to file its report

with the legislative assembly is not of controlling importance. Such failure or neglect does not release the defendants whose duty it was to file statements with the state auditor from their statutory duty; nor does it release the budget board from its duty of reporting to the legislative assembly such facts as the law says it shall report, or from filing with the legislative assembly such statements and reports as the law says shall be filed. The purposes sought to be accomplished by requiring heads of state departments, officers and commissions, to file the prescribed statements with the state auditor, the inspection of these by the state budget board, and the filing of such statements with the legislative assembly, still remain, and will continue at least as long as the legislative assembly to whom they are to be submitted may consider them in connection with legislative action.

Even in a mandamus proceeding, "ordinarily, it is no objection to the issuance of the writ that the time for the performance of the duty is past, since it is only in case of default in performance at the time that the writ can issue." 38 C. J. p. 555.

In State ex rel. Arthurs v. Chouteau County, the supreme court of Montana said: "This duty is absolute—one resulting from the office and specifically enjoined by law. To say that the courts are helpless to compel the performance of such a duty, merely because the time within which the duty should have been performed has elapsed, is tantamount to holding that a public official, by delaying action until the time designated by law has expired, may defeat the will of the people, as expressed by the legislature, and that there is not any redress for those who are injured by such nonaction. Cases may arise where the courts are not able to render any adequate assistance, but this is not one of them. The board will not be heard to say that it is too late to do that which it ought to have done at the proper time, or to take advantage of its own mistake to deprive these counterpetitioners of a right which the law secures to them." 44 Mont. 51, 118 P. 804, 810. Mc-Conihe v. State, 17 Fla. 238, 272. See also High, Extraordinary Legal Remedies, 401; Merrill, Mandamus, §§ 50, 79; Conn v. Richmond, 17 Cal. App. 705, 121 P. 714, 719.

It follows, from what has been said, that there is presented here a justiciable controversy between adverse parties in so far as it relates

to, and involves, the duty of such of the answering defendants as have refused to file with the state auditor the statements required by the State Budget Board Law.

The object of the State Budget Board Law was, and is, to enable the state budget board to assemble and present to, and for the use and benefit of, the members of the legislative assembly, pertinent facts regarding state departments, institutions and undertakings to the end that the lawmakers may have as complete and as impartial information as the members of the budget board may be able to obtain as to the expenditures that must be authorized by the legislative assembly to carry on the activities of the state; and also so that the lawmakers may have an estimate of the probable revenues of the state out of which the expenditures must be paid. The State Budget Board Law prescribes no forms, and vests the members of the state budget board with wide powers as to the detail and scope of the information to be listed and supplied by the various state departments, officers and institutions. No question is presented here as regards the information to which the budget board is entitled, or which it has requested. The sole question is whether the defendants, or any of them, who have failed to file the requested statements are required to do so. The only justiciable question, therefore, which presents itself for determination here, is which of the defendants, who have failed to prepare and file the requested reports, are required to do so under the provisions of the State Budget Board Law?

According to the State Budget Law "the head of each department of the state government, and each officer, board or commission, in charge of any educational, charitable, penal or other institution or undertaking, supported wholly or in part by appropriations from the state treasury" is required to fill out and return the blank received from the state auditor. Supp. 1925, § 710a3. The question therefore resolves to this: Which defendants, who are heads of state departments, or officers, boards, or commissions in charge of any educational, charitable, penal or other institution or undertaking, that will require an appropriation to carry on its activities during the fiscal biennium which commences July 1, 1939, have refused, or failed, to prepare and file with the state auditor, as secretary of the state budget board, and

for the use and benefit of such board, the statement prescribed by § 710a3, Supp. 1925?

After July 1, 1939, "all public moneys, from whatever source derived" must be paid over by "the public official, employee, agent, director, manager, board, bureau, or institution of the state receiving the same to the state treasurer;" the state treasurer must deposit the same "to credit of the state;" and the moneys so received and deposited can "be paid out and disbursed only pursuant to appropriation first made by the legislature." N. D. Const. § 186, as amended. The constitutional amendment makes two exceptions to the general rule thus stated:— (1) fees collected in connection with certain professions, trades, and vocations enumerated in the constitutional provision, and specifically excepted from its operation; and (2) funds for certain specified purposes "appropriated" in the constitutional amendment. No "fees and moneys" covered by the first exception in the constitutional amendment are involved here; but, some of the departments, institutions or undertakings mentioned in the appropriations are.

The constitutional amendment provides: "There is hereby appropriated the necessary funds . . . required for the payment of losses, duly approved, payable from the State Hail Insurance Fund, State Bonding Fund, and State Fire and Tornado Fund, and required for the payment of compensation to injured employees or death claims, duly approved, payable from the Workmen's Compensation Fund, . . . and the funds allocated under the law to the State Highway Department, and the various counties for the construction, reconstruction, and maintenance of public roads."

It is said that the moneys in the State Hail Insurance Fund, and the State Bonding Fund, the State Fire and Tornado Fund, and the Workmen's Compensation Fund, are not state moneys; that they are moneys held in trust by the state for the benefit and protection of those who, under the terms of the several acts, may become claimants against such funds; and that the moneys in such funds may not be deposited in the general fund of the state and appropriated by the legislature for general purposes. Upon this premise, it is argued that § 186 of the Constitution, as amended, has no application to the moneys in such funds.

The argument is predicated upon an incorrect premise, and cannot

be sustained. Section 186 of the Constitution, as amended, does not say that all public moneys shall be deposited in the general fund of the state, or made available for appropriation by the Legislative Assembly for any general purpose it may choose. It says: "All public moneys, from whatever source derived, shall be paid over . . . to the state treasurer, and deposited by him to the credit of the state, and shall be paid out and disbursed only pursuant to appropriation first made by the legislature." If moneys are collected for a special public purpose (as for instance premiums for the Fire and Tornado Fund) they must be deposited by the state treasurer to the credit of the state; but it is not contemplated that they shall become part of the general revenue of the state, and disbursed for general governmental purposes. Section 186, as amended, does not abolish or prohibit special funds. It restricts the use of moneys in such funds to the purposes that are designated in the appropriations set out therein, and such further appropriations as may be made by the legislature.

It is of no consequence whether moneys are available for appropriation for general purposes or whether they are collected, and must be expended, for certain designated purposes. The fact remains that the laws under which the moneys in these several funds have been, are being, and will be collected, are general state laws, and the moneys in these funds have been collected, and must be expended, for certain public purposes designated in the acts under which they have been collected. The funds have been created by legislative authority. They are being maintained and operated pursuant to legislative authority, and the moneys in them now, or that hereafter will be placed in them, have been, and will be, collected pursuant to legislative authority. Section 186 of the Constitution, as amended, is intended to throw further safeguards around the expenditure of moneys collected pursuant to law, and to be expended for public purposes. There is as much reason for safeguarding the expenditure of moneys held by the state in trust for expenditure for certain designated purposes as there is to place safeguards around the expenditure of moneys collected for general purposes. The language employed in § 186 of the Constitution, as amended, discloses that it was the intention that all moneys collected from any source for any, and all, of said funds should be within the provisions of said section, otherwise the provision appropriating the

necessary funds for the payment of claims against these several funds would be meaningless.

It will be noted that the appropriations made (in § 186, as amended) from the various funds, is limited to certain definite purposes. There is no general appropriation from any of the funds. There is no appropriation, for instance, for administrative purposes. It is apparent, therefore, that no disbursement may be made for such purposes, or for any purposes other than those specified in the constitutional amendment, except pursuant to specific legislative appropriation. Hence, it is the duty of the commissioner of insurance to file statements with the state auditor, as required by the State Budget Board Law, for the State Hail Insurance Fund, the State Bonding Fund, and the State Fire and Tornado Fund. It is, also, the duty of the Workmen's Compensation Bureau to file such statement.

The only funds appropriated by the constitutional amendment to the State Highway Department are "the funds allocated under the law to the State Highway Department, and the various counties for the construction, reconstruction and maintenance of public roads." Clearly, it will be necessary for the State Highway Department to be "supported wholly or in part by appropriation from the state treasury" in carrying on the activities of the department "during the two fiscal years next ensuing;" and it will be the duty of the head of the department to file with the state auditor the statement prescribed by the State Budget Board Law.

The Public Welfare Board of North Dakota, has been, and, of necessity, must continue to be "supported wholly or in part by appropriations from the state treasury" if it is to continue to carry on its activities "during the two fiscal years next ensuing." The board is within the purview of the State Budget Law, and it will be the duty of such board to file with the State Auditor the statement prescribed by the State Budget Law.

What has been said regarding the Public Welfare Board applies as well to the Board of Railroad Commissioners, and to the Workmen's Compensation Bureau as regards the Employment Service Account, maintained as a part of the Unemployment Compensation Administration Fund, under the administration of said Bureau.

The Bank of North Dakota and the North Dakota Mill and Elevator

Association are named as parties defendant. The act creating the Bank of North Dakota provides that "the Industrial Commission shall operate, manage and control the Bank of North Dakota" (Laws 1919, chap. 147), and the act creating the North Dakota Mill and Elevator Association provides that "the Industrial Commission shall operate, manage and control the Association." Laws 1919, chap. 152; Laws 1933, chap. 193. The Industrial Commission consists of the Governor, the Attorney General and the Commissioner of Agriculture and Labor. The Attorney General is, also, made the attorney for the Commission. Laws 1919, chap. 151.

As the Industrial Commission is in charge of the Bank of North Dakota and the Mill and Elevator Association, it is the duty of such Commission to file with the state auditor whatever statement may be required to be filed under the State Budget Board Law, as regards the Bank and the Mill and Elevator Association. The Industrial Commission is not, nor are the members thereof, parties to this action. It is true two of the members of the Industrial Commission appear as plaintiffs, as members of the state budget board; but their appearance as plaintiffs is in the roll of parties adverse to, and having an actual controversy with, the Bank and the Mill and Elevator Association, and with the Commission having these undertakings in charge. We have this situation then: neither the Commission, nor the members of the Commission, in charge of the Bank and the Mill and Elevator Association are parties to this action; two members of the state budget board are, also, members, and constitute a majority, of the Industrial Commission; and these two join the other members of the state budget board as plaintiffs in this action to obtain a judgment declaring that it is their duty, together with the other member of the Industrial Commission, to file, that is, to have the Industrial Commission file, certain statements with the State Auditor as regards the Bank and the Mill and Elevator Association.

It is a general rule that the same person cannot be both plaintiff and defendant at the same time in the same action or proceeding, whether he sues alone or is joined with others, even though he may assume to act in different capacities. 20 Stand. Proc. p. 879; Globe & R. F. Ins. Co. v. Hines (C. C. A. 2d) 273 F. 774, 777. It is true that the rule does not apply where, according to the actual interests involved, the

case does not amount to an action by one party against himself, and the rule will not be enforced if resort cannot be had to equity, and the party having a meritorious case would otherwise be without remedy (State v. Bonzer, 68 N. D. 311, 279 N. W. 769): Nevertheless, "it is incongruous that the same person should direct and conduct both the prosecution and the defense of the same suit, no matter in what capacity he may appear." Globe & R. F. Ins. Co. v. Hines, supra.

Assuming, without deciding, that the budget board and the members thereof may bring action to obtain a declaration of the duties of the members of the Industrial Commission toward the budget board, notwithstanding the fact that two of the members of the budget board are also members, and constitute a majority, of the Industrial Commission; and, assuming further that such declaration may be made even though the Industrial Commission was not, nor were the members thereof, made parties, the fundamental question still remains whether there is presented for determination a real and justiciable controversy between adverse parties.

As has been pointed out, a declaratory judgment must be based upon an actual controversy. 16 Am. Jur. 282, Declaratory Judgments. Such judgment can be rendered only where the question in dispute is real, and not merely abstract or hypothetical; where the question is raised by one who has an interest in and a legal right to raise it, and asserted against someone who has an adverse interest. 16 Am. Jur. 282, 283, Declaratory Judgments; Reese v. Adamson, 297 Pa. 13, 146 A. 262; Lynn v. Kearney County, 121 Neb. 122, 236 N. W. 192; County Bd. of Edu. v. Borgen, 192 Minn. 512, 257 N. W. 92; State ex rel. La Follette v. Dammann, 220 Wis. 17, 264 N. W. 627, 103 A.L.R. 1089. It must also appear that the rendition of the declaratory judgment "would terminate the uncertainty or controversy giving rise to the proceeding." State ex rel. La Follette v. Dammann, supra; Allegheny County v. Equitable Gas Co. 321 Pa. 127, 183 A. 916. A court "cannot be required to go into general propositions or prophetic statements of how it is likely to act upon other possible or even probable issues that have not yet arisen." Barker Painting Co. v. Local No. 734, B. P. D. P. 281 U. S. 462, 74 L. ed. 967, 50 S. Ct. 356. Claims based merely upon assumed potential invasion of rights will not warrant a

declaratory judgment. Ashwander v. Tennessee Valley Authority, 297 U. S. 288, 80 L. ed. 688, 56 S. Ct. 466.

Upon the record before us, considering the parties, the allegations in the pleadings, the proof or want of proof, the findings and judgment, and the contentions and argument of the parties, we are of the view that so far as the Bank of North Dakota and the Mill and Elevator Association are concerned, there is not presented an actual, justiciable controversy between adverse parties. It is rather an application for advice as to the probable or possible effect of § 186, as amended, upon the business practices of these institutions, after July 1st, 1939. Some of the questions presented may never arise. None of those that were argued and are actually pressed for decision involve the state budget board. They involve the duties of the Industrial Commission, or whatever officer, board or commission, will be in charge of the Bank of North Dakota and the Mill and Elevator Association after July 1st, 1939; and advice is sought from this court in regard thereto. The action is dismissed as to the Bank and the Mill and Elevator Association.

In order to obviate any possible misunderstanding, it should be said that no criticism of counsel or parties is intended by what is said in this opinion regarding parties, or want of parties, or the existence or nonexistence of an actual, justiciable controversy. Without doubt they were actuated by a sense of duty in seeking the aid of the courts. This does not, however, authorize the courts to give advice and counsel.

As has been pointed out, the Declaratory Judgments Act does not authorize the rendition of advisory opinions. Indeed, if it did so authorize, it would be unconstitutional. As was said by the court of appeals of New York, in an opinion written by Judge Cardozo in Self-Insurer's Asso. v. State Industrial Commission, 224 N. Y. 13, 119 N. E. 1027, 1028: "The function of the courts is to determine controversies between litigants. (Citation of authorities.) They do not give advisory opinions. The giving of such opinions is not the exercise of the judicial function. . . . In the United States no such duty attaches to the judicial office in the absence of express provision of the Constitution. . . . In this state the Legislature is without power to charge the courts with the performance of nonjudicial duties."

The same views have been expressed by the Supreme Court of the United States in several cases. See Muskrat v. United States, 219

U. S. 346, 55 L. ed. 246, 31 S. Ct. 250; Federal Radio Commission v. General Electric Co. 281 U. S. 464, 74 L. ed. 969, 50 S. Ct. 389; Ashwander v. Tennessee Valley Authority, 297 U. S. 288, 80 L. ed. 688, 56 S. Ct. 466. They have also been voiced by this court. State ex rel. Olsness v. McCarthy, 53 N. D. 609, 207 N. W. 436.

In Federal Radio Commission v. General Electric Co. 281 U. S. 464, 74 L. ed. 969, 50 S. Ct. 389, supra, the United States Supreme Court said: "It (the United States Supreme Court) cannot give decisions which are merely advisory; nor can it exercise or participate in the exercise of functions which are essentially legislative or administrative."

In State ex rel. Olsness v. McCarthy, 53 N. D. 609, 207 N. W. 436, supra, this Court said: "The question is merely an abstract one, and arises solely because there is a disagreement between two officers as to what rule of law shall apply when an actual transaction does arise. As we view the case, this court is asked to deliver an advisory opinion. This we may not do. The courts of this state are authorized only to determine questions of law as they arise in actual controversies and may not properly decide abstract legal questions or render purely advisory opinions."

In some states, the Constitution imposes the duty upon the judges of the highest court to render advisory opinions. (103 A.L.R. p. 1085.) In this state, no such duty has been imposed. On the contrary, the power to do so, has been denied. The question whether the judges of the supreme court should be required to give advisory opinions was considered with much care in the North Dakota Constitutional Convention. After the Convention had agreed to adopt § 96 of the Constitution, which provides: "No duty shall be imposed by law upon the supreme court or any of the judges thereof, except such as are judicial" (N. D. Const. § 96) it was proposed that the following provision be placed in the Constitution: "The Judges of the Supreme Court shall give their opinion upon important questions of law and upon solemn occasions, when required by the Governor, the Senate or the House of Representatives; and all such opinions shall be published in connection with the reported decisions of said court." Debates Constitutional Convention (N. D.) p. 228.

Senator Purcell immediately made the observation that this would

conflict with § 96, for, said Senator Purcell: "To give their opinions to a state officer would not be a judicial function."

Judge Lauder, speaking in opposition to the proposed provision requiring judges of the supreme court to give advisory opinions, said in part: "The gentleman from Burleigh has evidently forgotten that in all human probability we will have in this state an officer designated as the attorney general, whose peculiar business it will be to advise the state officers and the legislature when called upon. . . . The attorney general is the officer to advise the civil officers, and when questions come before the supreme court, that court is then untrammeled. The gentleman says that this provision is found in many constitutions. I grant it may be found in a very few, and I think I can safely say that there is not a state in the Union where that provision prevails but not only the supreme court but every other person who has an intimate knowledge of the workings of that provision would wish it were not there." Debates Constitutional Convention (N. D.) pp. 230, 231.

Other delegates, including Judge Carland and Senator M. N. Johnson, spoke in opposition to the proposed provision, requiring the judges of the supreme court to give advisory opinions, and the proposal was finally defeated.

Judge Carland said, in part: "I sincerely hope that no such provision will be engrafted into the Constitution requiring the supreme court to perform anything but judicial duties. Section twelve (N. D. Const. § 96) was drawn to prevent this thing . . ." Debates Constitutional Convention (N. D.) pp. 232, 233.

Senator Johnson said, in part: "The premises of the gentleman from Burleigh are perfectly correct, namely, that the officers of the state and the legislature should have some guide in legal matters. So far, so good; we concede that, but his logic is wrong—his conclusion is fallacious. He draws the conclusion that the only way to get this legal advice is to put it in the Constitution that the appeal for legal information shall be made to the supreme court. We have a department specially provided to fill that—it has come down from the tradition of our fathers. . . . That is exactly the province of the attorney general in the state—that is the province of the Attorney General at Washington." Debates Constitutional Convention (N. D.) p. 274. The debates of the Constitutional Convention leave no doubt that it

was the deliberate judgment of the framers of the state Constitution that judges of the supreme court, as part of their official duties, should not be required, or authorized, to give advisory opinions. So, in this state, it is not a matter of choice whether the judges of the supreme court shall, or shall not, give advisory opinions. The framers of the Constitution deliberately decided that they should not, and they inserted in the Constitution a provision which, according to the views they expressed, would preclude any possibility of the judges of the supreme court being required to give advisory opinions.

What has been said as regards the action against the Bank of North Dakota and the North Dakota Mill and Elevator Association is determinative of the action against the State Treasurer, and the action is ordered dismissed as against him.

A number of the defendants in this case interposed no answers. They merely entered into a stipulation with the attorneys for the plaintiffs to the effect that they entered appearances in the action and submitted their persons and "subject-matter" to the jurisdiction of the court. As regards these several defendants, it does not appear there is any actual controversy between adverse parties. As to many of them, the questions proposed for determination have no relationship to any duty arising under the State Budget Board Law. As to none of them is there presented, as we view it, an actual, justiciable controversy presented by parties having adverse interests and involving issues ripe for determination. What is sought is "simply an advisory judgment on numerous points of law," which, "they fear may arise if they, in their official capacity, pursue a certain course of conduct" (Reese v. Adamson, 297 Pa. 16, 146 A. p. 263).

The defendants who fall in this class are: The Secretary of State, the Board of University and School Lands, the Board of Trustees for the Teachers' Insurance and Retirement Fund, the State Game and Fish Commissioner, the State Seed Commissioner, and the members of the State Board of Administration. The action is ordered dismissed as to them.

This opinion disposes of all questions properly determinable in this action. In so far as the judgment appealed from determines other questions than those determined here, it is set aside.

NUESSLE, Ch. J., and MORRIS, J., and ENGLERT, Dist. J., concur.

SATHRE, J., did not participate, HON. M. J. ENGLERT, Judge of First Judicial District, sitting in his stead.

BURR, J. (concurring specially). I agree with the principles of law laid down in this opinion, except as to the right of the plaintiff to maintain the action, and that there is a real controversy.

I doubt whether the statute gives the board this authority to maintain the action. A board has no more power than the statute gives it and it is not entitled to extend that power simply because it may deem it advisable. It may be the legislature should have authorized the board to compel departments to report to the state auditor; but it saw fit to limit the work of the budget board to a consideration of the requests filed with the auditor, presumably on the theory that a department did not need an appropriation when no request was made for one. The legislature has the cure of this situation in its own hand. The auditor did not see fit to mandamus these departments and these requests are not filed with the auditor as secretary of the board. But the majority of the court has seen fit to consider that at least by implication the power to maintain the action is given to the budget board.

Then, again, this proceeding is an attempt to obtain an advisory opinion, which cannot be given. This is the real purpose—we may say the avowed purpose. However, the court deciding otherwise, then my opinion in the decision is correct.

CHRISTIANSON, J. (on petition for rehearing). The plaintiff, and the defendants, North Dakota Workmen's Compensation Bureau and the Board of Railroad Commissioners have petitioned for a rehearing.

The petition is directed at what was said in our former opinion in this case regarding the effect of § 186 of the Constitution, as amended, upon "special funds." Attention is called to former decisions of this court involving the State Bonding Fund (State ex rel. Linde v. Taylor, 33 N. D. 76, 156 N. W. 561, L.R.A.1918B, 156, Ann. Cas. 1918A, 583), and the Workmen's Compensation Fund (State ex rel. Stearns v. Olson, 43 N. D. 619, 175 N. W. 714), and it is said that some of

the language in the former opinion in this case runs counter to what was said and ruled in the decisions in those cases.

It should be borne in mind that what was said in those decisions had reference to § 186 of the Constitution as it then was and now is; and that what was said in the former opinion in this case had reference to § 186 of the Constitution, as it will be after the amendment recently adopted takes effect on July 1, 1939.

In order that the differences between the two may be visualized, we set forth in parallel columns § 186, prior to the amendment, and as amended.

### Before Amended

"No money shall be paid out of the state treasury except upon appropriation by law and on warrant drawn by the proper officer, and no bills, claims, accounts or demands against the state, or any county or other political subdivision, shall be audited, allowed or paid until a full itemized statement in writing shall be filed with the officer or officers, whose duty it may be to audit the same."

### As Amended

"Section 1. All public moneys, from whatever source derived, shall be paid over monthly by the public official, employee, agent, director, manager, board, bureau, or institution of the state receiving the same, to the State Treasurer, and deposited by him to the credit of the state, and shall be paid out and disbursed only pursuant to appropriation first made by the legislature; provided, however, that there is hereby appropriated the necessary funds required in the financial transactions of the Bank of North Dakota, and required for the payment of losses, duly approved, payable from the State Hail Insurance Fund, State Bonding Fund, and State Fire and Tornado Fund, and required for the payment of compensation to injured employees or death claims, duly approved, payable from the Workmen's Compensation Fund, and required for authorized investments made by the Board of University and School Lands, and re-

quired for the financial operations of the State Mill and Elevator Association, and required for the payment of interest and principal of bonds and other fixed obligations of the state, and required for payments required by law to be paid to beneficiaries of the Teachers' Insurance and Retirement Fund, and required for refunds made under the provisions of the Retail Sales Tax Act, and the State Income Tax Law, and the State Gasoline Tax Law, and the Estate and Succession Tax Law, and the income of any state institution derived from permanent trust funds, and the funds allocated under the law to the State Highway Department and the various counties for the construction, reconstruction, and maintenance of public roads.

"This constitutional amendment shall not be construed to apply to fees and moneys received in connection with the licensing and organization of physicians and surgeons, pharmacists, dentists, osteopaths, optometrists, embalmers, barbers, lawyers, veterinarians, nurses, chiropractors, accountants, architects, hairdressers, chiropodists, and other similarly organized, licensed trades and professions; and this constitutional amendment shall not be construed to amend or repeal existing laws or acts amendatory thereof concerning such fees and moneys.

"Section 2. No bills, claims, accounts, or demands against the state or any county or other polit-

> ical subdivision shall be audited, allowed, or paid until a full itemized statement in writing shall be filed with the officer or officers whose duty it may be to audit the same, and then only upon warrant drawn upon the treasurer of such funds by the proper officer or officers.
>
> "Section 3. This amendment shall become effective on July 1, 1939."

In State ex rel. Linde v. Taylor, supra, the constitutionality of the act creating the state bonding fund was assailed, among others, on the ground that it authorized moneys in the state bonding fund to be paid out according to a procedure other than that provided by § 186 of the Constitution. In State ex rel. Stearns v. Olson, supra, the same question arose. In that case it was claimed that moneys in the Workmen's Compensation Fund might not be disbursed except by warrant drawn by the state auditor.

It was held in the decisions in each of these cases that the moneys in the respective funds there involved did not fall within the provisions of § 186 of the Constitution; that the moneys in such funds did not belong to the state, but were moneys collected for the special purposes designated in the respective acts, and were not subject to the provisions of § 186 of the Constitution. In each of the cases, the disbursements were made in the manner which the acts provided, and the question involved in each case was whether the Legislature had the power to provide for the mode of disbursement prescribed in the acts, or whether § 186 of the Constitution inhibited them from so doing. Of course, it goes without saying that if the legislature, in establishing the state bonding fund and the Workmen's Compensation Fund, had desired to do so, it might have provided that the disbursement and expenditure of the moneys should be made in strict conformity with the provisions of § 186 of the Constitution.

The question here is whether the change, as wrought in § 186 of the Constitution by the recent Amendment thereof, was intended to, and will, make that section, as so amended, applicable to the State Hail

Insurance Fund, the State Bonding Fund, the State Fire and Tornado Fund, and the Workmen's Compensation Fund. In the former opinion in this case, we held that question must be answered in the affirmative. And it seems to us that if the language of the amendatory provisions is given effect, no other conclusion can be reached.

Section 186 of the Constitution, as amended, provides: "All public moneys, from whatever source derived, shall be paid over . . . to the State Treasurer, and deposited by him to the credit of the state, and shall be paid out and disbursed only pursuant to appropriation first made by the legislature; provided, however, that there is hereby appropriated the necessary funds . . . required for the payments of losses, duly approved, payable from the State Hail Insurance Fund, State Bonding Fund, and State Fire and Tornado Fund, and required for the payment of compensation to injured employees or death claims, duly approved, payable from the Workmen's Compensation Fund, . . ."

It is an established general rule that constitutional provisions are to be construed as mandatory, unless a different intention is manifested. 12 C. J. p. 740; 55 R. C. L. p. 55. In this state this rule has been embodied in the Constitution in the following express terms: "The provisions of this Constitution are mandatory and prohibitory unless, by express words, they are declared to be otherwise." N. D. Const. § 21.

There is nothing in § 186 of the Constitution, as amended, or in any other provision in the Constitution, to indicate any intention that the above quoted provisions of said § 186 should not be given the full meaning which they convey. Manifestly, there could be no intention to appropriate moneys to which the Section did not apply.

Attention is called to the general rule that "constitutional provisions are not to be construed as themselves making appropriations unless they are clearly so intended." 59 C. J. p. 237. It is true, it is rather unusual to make appropriations in a constitutional provision. Ordinarily, appropriation is a matter for the legislature. But, if the people determine to make an appropriation in a constitutional provision, and manifest that determination by what is said in the provision, that is an end of the matter.

"Self-executing provisions of the constitution specifically appropriating particular funds or sums for designated purposes exempt the mat-

ters therein dealt with from the necessity of legislative appropriation established by other provisions of the constitution, and the constitutional provisions are themselves a sufficient appropriation for the purposes and to the extent comprised within their terms; and no legislation may be enacted such as will impair the operation of a constitutional appropriation." 59 C. J. pp. 237, 238.

The language used in § 186 of the Constitution, as amended, clearly manifests an intention to "appropriate the necessary funds" required for payment of duly approved claims, of the character stated in the Amendment, against the State Hail Insurance Fund, the State Bonding Fund, the State Fire and Tornado Fund, and the Workmen's Compensation Fund. But, the appropriation is expressly limited to, and disbursement thereunder may be made only for, the purposes stated.

In the petition for rehearing it is said that in the former opinion "the court overlooked and failed to distinguish between special funds created by law for the deposit of public moneys of the state and special funds created by statute for the deposit of funds impressed with a trust;" that some of the language in that part of the opinion relating to special funds is uncertain, and renders it susceptible of two wholly different interpretations, namely, that it is susceptible of the interpretation (1) that § 186 of the Constitution, as amended, operates to abolish all special funds that have been created by law, in which are deposited public funds collected for and belonging to the state, and earmarked for certain definite purposes, and prohibits the establishment of similar funds; and (2) that it is, also, susceptible of the interpretation that such special funds are neither abolished nor prohibited by said § 186, as amended.

It is further asserted in the petition for rehearing that what is said in the former opinion regarding the special funds "is susceptible to the interpretation that the Commissioner of Insurance and the Workmen's Compensation Bureau have now no authority in law to invest their trust funds in securities authorized by law without legislative authority in the form of an appropriation having been first made for that purpose."

In the former opinion, after having considered at some length the legal duties and obligations of the respective parties, we said:

"It follows from what has been said, that there is presented-here a

162

justiciable controversy between adverse parties in so far as it relates to, and involves, the duty of such of the answering defendants as have refused to file with the state auditor the statements required by the State Budget Board Law. . . .

"No question is presented here as regards the information to which the Budget Board is entitled, or which it has requested. The sole question is whether the defendants, or any one of them, who have failed to file the requested statements are required to do so. . The only justiciable question, therefore, which presents itself for determination here, is which of the defendants, who have failed to prepare and file the requested reports, are required to do so under the provisions of the State Budget Board Law?"

It was argued in this case that no duty existed under the State Budget Law to submit reports for the State Hail Insurance Fund, State Bonding Fund, State Fire and Tornado Fund, and the Workmen's Compensation Fund, because, it was said, the moneys in these several funds do not belong to the state, but are merely held in trust by the state for the benefit and protection of those who, under the terms of the acts creating these funds, may become claimants against such funds. It was further argued that § 186 of the Constitution, as amended, contemplated that "all public moneys . . . paid over to the state treasurer" under its provisions must be deposited by him in the general fund of the state, and thereupon become subject to appropriation and available for disbursement for general governmental purposes, and it was asserted that the moneys were impressed with a trust, and could not be made a part of the general fund, and subject to expenditure as such even by constitutional amendment.

In disposing of the contentions thus advanced, we said, in part: "Section 186 of the Constitution, as amended, does not say that all public moneys shall be deposited in the general fund of the state, or made available for appropriation by the legislative assembly for any general purpose it may choose. It says: 'All public moneys, from whatever source derived, shall be paid over . . . to the state treasurer, and deposited by him to the credit of the state, and shall be paid out and disbursed only pursuant to appropriation first made by the legislature.' If moneys are collected for a special purpose (as for instance

premiums for the Fire and Tornado Fund) they must be deposited by the state treasurer to the credit of the state; but it is not contemplated that they shall become part of the general revenue of the state, and disbursed for general governmental purposes. Section 186, as amended, does not abolish or prohibit special funds. It restricts the use of moneys in such funds to the purposes that are designated in the appropriations set out therein, and such further appropriations as may be made by the legislature. . . .

"It will be noted that the appropriations made (in § 186, as amended) from the various funds, is limited to certain definite purposes. There is no general appropriation from any of the funds. There is no appropriation, for instance, for administrative purposes. It is apparent, therefore, that no disbursement may be made for such purposes, or for any purposes other than those specified in the Constitutional Amendment, except pursuant to specific legislative appropriation. Hence, it is the duty of the Commissioner of Insurance to file statements with the state auditor, as required by the State Budget Board Law, for the State Hail Insurance Fund, the State Bonding Fund, and the State Fire and Tornado Fund. It is, also, the duty of the Workmen's Compensation Bureau to file such statement."

This language seems clear. It was directed at the contention that had been advanced that the State Hail Insurance Fund, the State Bonding Fund, the State Fire and Tornado Fund, and the Workmen's Compensation Fund were not subject to the provisions of § 186 of the Constitution, as amended, and that no appropriation would be needed to carry on those activities. The language was employed to show that a duty rested upon those in charge of those several funds to submit the required reports under the State Budget Board Law.

The question of the status of other special funds that have been created by law in which public moneys belonging to the state and earmarked for certain definite purposes have been deposited, such for instance as the Auto-Transportation, and the Scale Inspection funds, the moneys in which are earmarked for expenditure in carrying on certain functions assigned to the Board of Railroad Commissioners, was wholly foreign to the subject under consideration. The moneys in the funds last mentioned are clearly public moneys and fall within the purview

of § 186, as amended, both as regards the requirements that they be paid over to the state treasurer and deposited by him to the credit of the state, and the requirement that they shall be paid out and disbursed only pursuant to appropriation first made by the legislature. This being so, the board in charge of the particular activities in which the moneys in such funds are expended were, and are, required to submit reports under the State Budget Board Law. This is true whether the special funds as established remain, or are abolished. Obviously, therefore, the question whether the statutes establishing such funds and requiring moneys earmarked for certain purposes to be placed therein, were, or were not, abolished by § 186 of the Constitution, as amended, has no bearing upon the question whether the Board of Railroad Commissioners were required to make a report under the State Budget Board Law, and that question was not, and is not, considered or decided.

The same is true as regards the matter of investment of moneys in the State Hail Insurance Fund, the State Bonding Fund, the State Fire and Tornado Fund, and the Workmen's Compensation Fund. Of course, the laws now in force relating to, and authorizing, such investments will remain wholly unaffected by the amendment of § 186 of the Constitution until July 1st, 1939. Whether the present laws relating to, and authorizing, such investments will remain in force after that date, or whether additional legislation will be required to authorize the paying out and disbursement of moneys in such funds in order to make possible the investment of the moneys in such funds subsequent to July 1st, 1939, is of no controlling effect upon the question, as to whether those in charge of these several funds and the activities carried on by them are required to submit statements under the State Budget Board Law. Therefore, that question was not, and is not, considered or determined in this case. What was said in the former opinion regarding the limited purposes for which appropriations are made in § 186 of the Constitution, as amended, was said to show that the appropriations in that section were not in and of themselves sufficient to dispense with further appropriations by the legislature; and that inasmuch as further appropriation by the legislature would be required to enable the several funds to carry on their prescribed activities, there

was, and is, a duty incumbent upon those in charge of the several funds to file the statements prescribed by the State Budget Board Law.

Rehearing denied.

NUESSLE, Ch. J., and BURR and MORRIS, JJ., and ENGLERT, Dist. J., concur.