VALBERG COULTER, Aletta Brunsvold, Jean Marie Wardrope, and Abigail Scott Waller, Respondents v. JOEL RAMBERG, Appellant.

(55 NW2d 516)

Opinion filed November 10, 1952

*Sinness & Duffy,* for respondents.

*Eugene A. Burdick,* for appellant.

GRIMSON, J. The plaintiffs bring an action to quiet title in themselves to the Southeast Quarter of the Southwest Quarter of Section Twenty-nine and the Northeast Quarter of the Northwest Quarter of Section Thirty-two, all in Township One Hundred Fifty-six, North of Range Ninety-five West of the 5th. P. M. Their complaint follows the statutory form claiming ownership and demanding that the defendant be required to set forth all his adverse claims to said property and that the same be decreed null and void. The defendant admits he claims an interest in the land and sets up against the plaintiffs the ten year statute of limitations (Sec. 28–0122 NDRC 1943) and alleges laches on the part of the plaintiffs. Then the defendant makes a counterclaim in the form of statutory complaint to quiet title in him alleging that he is the owner of the property and that the claims of the plaintiffs are inferior to his rights. Plaintiffs reply alleging that defendant's title is based upon a void tax deed from Williams County.

The action was tried to the court and judgment rendered quieting title in the plaintiffs. Defendant appeals and asks for a trial de novo.

The facts as they appear from the stipulation of counsel are that A. A. Brunsvold became the owner of the land in controversy, heretofore described, on August 2, 1925, by virtue of a sheriff's deed issued on the foreclosure of a mortgage given by a prior owner of said premises. Then Brunsvold paid the taxes

up to 1930. For the 1930 taxes the land was sold to Williams County and several subsequent tax sale certificates were issued to Williams County. No redemption was made from these sales. Williams County in May 1939 commenced proceedings to mature its title to said land. Such proceedings were carried to a conclusion by the issuance of a tax deed to Williams County (Sec. 57–2809 NDRC 1943) on March 1, 1940. Thereupon Williams County went into possession of said land and leased it for cash rent. A. A. Brunsvold died intestate. The plaintiffs, his two daughters and two granddaughters are his heirs. On Nov. 8, 1940, Williams County advertised this land, appraised at $80.00 for sale at public auction, as provided by Sec. 6, Chapter 235 S.L. 1939. At that auction, held Nov. 19, 1940, there were no bidders for this land. Thereafter this defendant, Joel Ramberg, made application to purchase the land in question at the appraised price which application was approved by the county commissioners of Williams County. Notice of such proposed sale was mailed to the former owner and received by his administrator, E. S. Wardrope, who made no effort to repurchase the land. On January 6, 1942, the defendant, Joel Ramberg, having paid the purchase price, received a deed from Williams County for said premises in accordance with Sec. 57–2816 NDRC 1943. He has since that time been in exclusive, adverse possession of said lands, cultivated and improved the same and paid all taxes levied against the same for the years 1942 through 1951 inclusive.

The plaintiffs claim title through their ancestor, A. A. Brunsvold by inheritance. They ask that the defendant set forth his claims and that it be determined whether his claim is superior to their own. Defendant shows that this title is based upon the deed from Williams County to defendant. Plaintiffs claim that that deed is void. The validity of that deed is, therefore, the first matter for decision. If that is valid defendant has a title superior to that of the plaintiffs irrespective of the other defenses put forward by the defendant assailing plaintiffs' title.

The plaintiffs attack the proceedings leading up to the county's tax deed. First they attack the tax sale certificate which was issued to the county. The form of certificate used was that prescribed by Chapter 298 S.L. 1931 and the only form pre-

scribed by that statute. It recited that Williams County became the purchaser, "being the bidder who agreed to accept the lowest rate of interest thereon from the date of sale on the amount of such taxes, penalties and costs so paid by him, and that said rate of interest, which said purchaser so agreed to accept was 9 per cent per annum."

Plaintiffs claim this indicated that Williams County became a competitive bidder at the sale contrary to law. State ex rel. Atkins v. Lawler, 53 ND 278, 205 NW 880. Chapter 289 S.L. 1931, provided that if any tract remained unsold for want of bidders it should be again offered before the sale closes and "If there is no other bidder he (county treasurer) shall bid for the same in name of the county and the same shall be struck off and become forfeited to the county in which such sale takes place . . . ." Said Chapter further provides that: "Whenever any real property shall be sold to the county, the county auditor shall make out a certificate of sale to the county in the *same manner* as if sale had been made to any other person which certificate shall be retained by the county treasurer . . . ." Thus the law provides only one form of certificate and says that when the land is sold to the county the auditor shall make out a certificate *"in the same manner"* as other certificates of sale. (Emphasis supplied.) The fact that the certificate shows 9 per cent, the highest rate allowed by law, Chapter 289 S.L. 1931, is in harmony with the view that there was no competitive bidding.

We hold the county auditor's certificate of sale to Williams County is valid.

The plaintiffs object to the sufficiency of the proof that the notice of the expiration of the period of redemption was properly served upon the plaintiffs' predecessor in title. The law provides that notice shall be sent by registered mail to the owner and lien holders of the property in question. Chapter 235 S.L. 1939 (Sec. (a)). There is stipulated in evidence a signed return receipt of A. A. Brunsvold, plaintiffs' predecessor in title, and of Adrian E. Buttz, presumably a lien holder, dated May 31, 1939. A copy of the actual notice sent out, however, was not found in the files of the auditor. The presumption is that "official duty has been performed regularly." Sub. Sec. 15, Sec.

31–1103 NDRC 1943. That presumption is supported by these return receipts dated at the time the notice should have been sent out and by the further fact that the receipt, which was in the form of a post card, had a notation on the front or address side thereof, "A. A. Brunsvold, 29–32–156–95," indicating the description of the land in question. A similar notation was on the Buttz return receipt. No evidence is offered to dispute that presumption. Even if no copy of the notice was found that does not indicate that no notice was mailed. It will be presumed, therefore, that the notice of the expiration of the period of redemption was enclosed in the envelope for which the owner receipted.

In due time thereafter the auditor published a notice of the expiration of the period of redemption. Plaintiffs claim that notice states an amount in excess of that necessary to redeem and the wrong time within which redemption had to be made. That claim is based on the contention that Chapter 227 S.L. 1939 providing for the settlement of delinquent taxes by the payment of the original tax without any penalty or interest up to March 1, 1940 amends Section 3 of Chapter 235 S.L. 1939 which provides that the auditor shall give notice of the expiration of the period of redemption on all real estate on which the period of redemption will expire Oct. 1st. and that the amount necessary for redemption shall be the original tax with penalty and interest up to that time.

The published notice of the expiration of the period of redemption is in evidence. That notice states as provided by Chapter 235 that redemption had to be made on or before Oct. 1, 1939, and that the amount necessary to redeem was the original amount of the taxes plus interest to Oct. 1, 1939.

It becomes necessary, therefore, to determine whether Chapter 227 amends Chapter 235, both of which were passed by the same 1939 legislature as independent and separate acts.

In the construction of statutes a determination must be made as to what was the intention of the legislature in the enactment thereof. Such intent is the controlling factor and must be given effect to the fullest degree. As aids in finding that intent, the reason for the enactment of the law, evils at which the legis-

lation is aimed, the historical background and other statutes on related subjects may be considered. Hoellinger v. Molzhon, 77 'ND 108, 41 NW2d 217, 19 ALR2d 1147; 59 CJ 948; 50 Am Jur 271.

It is a matter of common knowledge that a severe depression existed in North Dakota during the period from 1930 to 1940. The conditions as to crops and prices prevailing made the cash resources of people very small. Very many people were unable to pay their taxes. The local and state governments were in difficulties for lack of tax receipts sufficient to carry on the processes of government. A real emergency faced the people and the government. This gave rise to the attempts of the legislatures meeting during that time to ameliorate those tax problems as far as possible. The five sessions of the legislature meeting in that decade passed 91 acts on tax matters.

A study of some of the acts by which the legislature attempted to overcome the emergency may throw light on the intent with which they passed Chapters 227 and 235 during the 1939 session.

In the 1931, 1933 and 1935 sessions of the legislature the emphasis seems to have been to give relief to the taxpayer by the extension of time within which the payment of taxes could be made or land redeemed from tax sales. That would enable the taxpayer to retain his property.

By Chapter 258 S.L. 1933 the legislature declared a public emergency on account of the depression and extended the period within which the owner could redeem from tax sales for two years after the approval of the act, May 3, 1933, but made the provision that the owner of such land "within 90 days after the date of the notice of expiration of the period of redemption file with the County Auditor a notice that he desires to take advantage of this Act and the further provision that the "County Auditor, in addition to the notice of expiration of the period of redemption usually required by law and as a part thereof shall notify such owner of his rights under this act." This act was re-enacted in substance by Chapter 280 S.L. 1935. That act was to take effect at the expiration of Chapter 258 S.L. 1933 and to extend the period of redemption to July 1, 1937. Again that act included provisions that the county auditor notify the owner of

such rights as a part of the notice of the expiration of the period of redemption, and for notice by the owner to the auditor of his desire to take advantage of the act. There is no extension of that act in the 1937 session laws.

The 1935 legislature, Chapter 277, declared a moratorium on tax sale proceedings until the 31st. day of December 1937, by suspending the operation of Chapter 266 S.L. 1927 which provides for a notice of expiration of period of redemption and service thereof, the issuance of tax deeds on property forfeited to the county and the sale thereof. This act was not renewed in 1937. The suspension of Chapter 266 S.L. 1927 was, therefore, ended on Dec. 31, 1937, after which said chapter again became effective.

In 1937 the legislature changed its policy in regard to the collection of taxes. Instead of granting an extension of time for the taxpayer and a declaration of a moratorium on tax sale proceedings a policy was adopted of encouraging tax payments by providing for tax settlements, waiving interest and penalty, if payments were made within stated times and providing for installment payments of delinquent taxes over a period of years. The emphasis now was laid on cash settlement of taxes and inducements were held out to the taxpayer to get on a cash basis of tax payments.

The 1937 legislature made provision for contract settlement of delinquent taxes, Chapter 240 S.L. 1937, giving the taxpayer the privilege of entering into a contract with the county for the payment of the taxes delinquent in 1936 and prior years without any delinquent interest and penalty, in six annual payments at 4 per cent interest from the date of the agreement, providing the taxpayer made cash payment on all taxes subsequent to Nov. 1, 1937.

These contract provisions are continued in Chapter 227 S.L. 1939, which extended the time for the payment of delinquent taxes for 1937 and prior years on paying the 1938 and subsequent taxes, and extended the contract payment period to ten years. Provision is also made that on payment of the original tax for 1937 and prior years without interest and penalty before Mar. 1, 1940, such taxes shall be cancelled and discharged.

There is no requirement in this act for the auditor at the time of giving the notice of the expiration of the period of redemption to notify the taxpayer of his rights under this act as there had been in the previous legislation on a deferment of tax payments.

It is contended by plaintiffs that Chapter 227, Laws of N.D. 1939, operated to extend the period of redemption from tax sales, which under the tax sale procedure statutes would expire October 1, 1939, until March 1, 1940, and to require that the amount of money stated as the amount necessary to be paid in order to effect a redemption in that year be reduced to the amount of the face of the taxes, without including penalty, interest or the costs of the sale.

We think it clear, however, from a consideration of the provisions of Chapter 227, supra, and the provisions of other enactments of the 1939 Legislative Assembly that such chapter does not in any way modify the provisions of the tax sale procedure statutes but is merely supplementary thereto.

The avowed purpose of Chapter 227, as stated in Section 5 thereof, is to provide for the settlement of delinquent taxes without the payment of penalty and interest in order to permit taxpayers to place themselves upon a current tax paying basis. This statute contains no reference to the expiration of periods of redemption from tax sales or to any amount which must be paid to redeem from a tax sale. If it is to be construed to extend the time to redeem and to reduce the amount of money required to be stated in the notice of expiration of redemption as the amount necessary to effect a redemption, that construction must be reached by inference and not from any of the express provisions of the statute. Such an inference would be contrary to the express provisions of Chapter 235, Laws of N.D. 1939 and would, therefore, amount to a repeal by implication, of these provisions. Repeals by implication are not favored and courts will not find such a repeal to have been effected if there are reasonable grounds to hold the contrary. City of Fargo v. Ross, 11 ND 369, 92 NW 449; State ex rel. Coghlan v. Poindexter, 49 ND 201, 190 NW 818; State v. Osen, 67 ND 436, 272 NW 783.

Chapter 235, supra, relates solely and specifically to tax deed proceedings. It provides (section 1, subsection 2) "After notice

of expiration of period of redemption is given, a redemption of real estate taxes may be made at any time up to October first following the date of the notice of the expiration of the period of redemption; and (section 1, subsection 3) "It shall be the duty of the County Auditor on or before the first day of June of each year to give notice of the expiration of the period of redemption as to all tracts of real estate on which the period of redemption will expire upon October first following."

It is clear from a consideration of these provisions that we cannot hold that Chapter 227, supra, by implication, extended the period of redemption from those sales where the period of redemption would ordinarily expire on October first 1939, to March first, 1940, because the authority of county auditors to give notice of the expiration of the period of redemption is limited to cases where the period would expire on October first. Either Chapter 227, supra, in no way repealed or modified the provisions of Chapter 235, supra, or if it did, then it completely did away with the rights of counties to mature their tax titles, by giving notice of the expiration of the period of redemption, from the effective date of Chapter 227 until June 1940. The latter construction would, in our opinion, be unreasonable. It would be inconsistent with the fact that the legislature of 1937 abandoned its policy of extension of time for payment of taxes and moratoria on tax deed proceedings.

There are also other statutory provisions which indicate that it was not the intent of the legislature that Chapter 227, supra, should repeal or suspend any part of Chapter 235, supra.

Section 3 of Chapter 227 provides: "Upon the execution and delivery of an extension agreement as herein provided, all proceedings for the collection of delinquent taxes, including any tax deed proceedings which may be pending, shall be suspended." The only reasonable construction that can be placed on this language is that the enactment of the statute alone did not suspend tax deed proceedings but that affirmative action under the statue would have that effect as to the individuals who took such action. Certainly if the enactment of this statute alone suspended tax deed proceedings, there would have been no need to provide that such proceedings should be sus-

pended in the cases of those individuals who took advantage of the act.

Chapter 238, Laws of N.D. 1939 provided: (Sec. 1) "Any real estate heretofore or hereafter forfeited to the County under tax deed proceedings, shall be subject to redemption by the owner whose title was forfeited or by his successor in interest while the title thereto remains in such county." (Sec. 2.) "Any person making redemption under this act shall be entitled to take advantage of the benefits of any tax reduction or other tax adjustment terms provided for *by this legislature;*" and (Sec. 4). "This act is in the nature of supplemental emergency legislation designed to encourage and facilitate the redemption or. repurchase of real estate forfeited to the counties by tax deed by former owners and shall be liberally construed to carry out that purpose."

It is apparent that the redemption referred to in Section 1 of Chapter 238 is a repurchase rather than a redemption. Coverston v. Grand Forks County, 74 ND 552, 23 NW2d 746. That is to say: the exercise of this right does not prevent loss of title, but regains a title which has been lost through fully completed tax ded proceedings. Willard v. Ward County, 72 ND 291, 6 NW2d 566.

This statute is a further indication that the legislature did not intend to suspend tax title proceedings, but on the contrary intended that such proceedings should take their normal course and so provided how titles lost after the passage of the act, as well as those lost before, could be recovered. This act also shows the legislature had in mind Chapter 227, supra, or similar legislation, and provided that a former owner might take advantage of tax reduction statutes, passed by the same legislature in repurchasing his forfeited land.

We think the legislative policy was to encourage tax debtors to pay their delinquent taxes, both by the inducement of waiving the penalty, interest and costs if payment was made within a specified time and by compulsion of tax sale proceedings. Such a construction is a reasonable one and reconciles all the provisions of the several tax statutes enacted by the 1939 legislative assembly.

It is only where a reasonable reconciliation of the provisions of two statutes is impossible and inconsistency is unavoidable that the later law will be held to repeal the earlier by implication. State v. Young, 68 ND 300, 279 NW 251; State v. Hawley, 68 ND 309, 279 NW 255.

We hold, therefore, that the notice of the expiration of the period of redemption given by the auditor in accordance with Chapter 235 S.L. 1939 was proper and the tax deed to Williams County based thereon is valid.

No objections are made to the proceedings by which the county sold the land to defendant. The deed from Williams County to the defendant conveys to him a valid title which is superior to the title claimed by the plaintiffs. That superior title of the defendant determines the instant case and renders it unnecessary and improper to consider the other questions raised by the parties.

The judgment of the district is reversed and the case is remanded to the District Court with directions to render judgment quieting title in the defendant as against the plaintiffs.

MORRIS, C.J., and CHRISTIANSON, SATHRE and BURKE, JJ., concur.