Peter WALLENTINSON and Hannah Wallentinson, his wife, as Joint Tenants; Louis A. *Johnson*; Fred B. Johnson; John K. Trenbeath; F. Kent Vosper; Russell Vosper; Dwight Holmes; Nellie W. Vosper; Berniece M. Fleckten; and Lenore M. Jensen; Plaintiffs and Respondents,

v.

WILLIAMS COUNTY, North Dakota, a Public Corporation; The Federal Land Bank of Saint Paul, a Corporation; and all other persons unknown, claiming any estate or interest in or lien or encumbrance upon the property described in the complaint; Defendants and Respondents,

and

North Dakota State Highway Department and The State of North Dakota; Defendants and Appellants.

No. 7852.

Supreme Court of North Dakota.

Feb. 29, 1960.

Bjella, Jestrab & Neff, Williston, and L. W. Fraase, Tioga, for plaintiffs and respondents.

Walter O. Burk, Williston, Robert J. Barry, Michael A. Schmitt, Stanley F. Casey and Harold W. Lee, St. Paul, Minn., for defendant and respondent Federal Land Bank of Saint Paul.

Michael R. McIntee, State's Atty., Williston, for defendant and respondent Williams County.

Leslie R. Burgum, Atty. Gen., and Vernon R. Pederson and Francis Breidenbach, Sp. Asst. Attys. Gen., for defendants and appellants.

Cox, Pearce & Engebretson, Bismarck, amicus curiae.

STRUTZ, Judge.

The plaintiffs bring this action to quiet title to a tract of land in Williams County, North Dakota, described as:

Southwest Quarter (SW¼) of Section 10, Township 156 North, Range 95 West.

The Federal Land Bank of Saint Paul was joined as a defendant in the complaint. The plaintiffs, however, acknowledge the interest of The Federal Land Bank in certain minerals in and under the real estate described, and no adverse issue is presented.

The sole issue presented to the court on this appeal involves the interest of the State of North Dakota in and to oil, gas, and minerals in and under three small strips or parcels of the land described in the complaint. These strips or parcels are described as:

1. The south 33 feet of the Southwest Quarter (SW¼) of Section 10, Township 156 North, Range 95 West. (The interest of the State in this strip or parcel is claimed under the provisions of Section 24–0703 of the North Dakota Revised Code of 1943 which provides that, in all townships outside of the limits of incorporated cities or villages, Congressional section lines shall be considered public roads.)

2. A strip 100 feet wide, lying north of, adjoining, and extending along the entire south line of the Southwest Quarter (SW¼) of Section 10, as described in the complaint, excepting that portion of the said tract lying within 33 feet of the section line, which portion is included under the previous strip described.

3. A strip 30 feet wide, lying 15 feet on each side of the following-described channel change centerline: Beginning at a point on the south line of said Southwest Quarter (SW¼) of Section 10 a distance of 1,031 feet south and 89 degrees, 58 minutes west of the southeast corner thereof, thence running north 0 degrees, 02 minutes west a distance of 110 feet, thence north 19 degrees, 02 minutes west a distance of 265 feet, excepting all that portion lying within 100 feet of the section line. (Tract contains 0.19 acres, more or less.)

To determine what interest the State has in oil, gas, and minerals under these tracts, which were taken for highway purposes, it is necessary to determine what type of title the State acquired in the various tracts.

■ The title the State acquired under the provisions of Section 24–0703 of the North Dakota Revised Code of 1943, providing that 33 feet on either side of Congressional section lines, in all townships outside of the limits of incorporated cities and villages, shall be considered public roads, was an easement only and the fee remained in the landowner. Rutten v. Wood, 79 N.D. 436, 57 N.W.2d 112.

Thus the State acquired no interest in the oil, gas, and minerals under the tract consisting of 33 feet along the south side of the quarter by reason of the fact that such tract was set aside by law as a public highway. The only interest which the public acquired by such dedication was an easement for passage, the title remaining in the landowner. If the claim of the State to the oil, gas, and minerals in and under this tract has any merit, such claim must be by reason of the later taking, by condemnation, of the 67 feet lying immediately north of and adjacent to and abutting the 33-foot strip.

The determination of this lawsuit therefore is entirely dependent on the title which the State acquired to the tracts taken by eminent domain. If the State acquired a fee simple absolute, with no right of reversion, it acquired all of the rights of the landowner from whom the land was taken, including rights to oil, gas, and minerals.

■ Generally, the nature or extent of a title or rights taken in the exercise of eminent domain depends on the statute conferring that power. Such statute will be strictly construed. Where the estate or interest to be taken is not definitely set forth, only such estate or interest may be taken as is reasonably necessary to carry out a public purpose for which the land is being taken. 30 C.J.S. Eminent Domain § 449, p. 195.

In eminent domain, therefore, that construction must be adopted which leaves the owner with the greatest possible estate, in the event of uncertainty or indefiniteness in the statute.

■ Since the general rule is that only such an estate in the property sought to be acquired by eminent domain may be taken as is reasonably necessary for the accomplishment of the purpose for which the proceedings are brought, and since all proceedings in eminent domain involve an element of compulsion as contrasted to the effect of a voluntary conveyance between individuals, it is necessary for us to determine what title was acquired by the State of North Dakota in the condemnation proceedings resulting in the taking of the tracts in question. The condemnation statute in force at the time of the taking of the land by the State in this case was Chapter 159 of the 1927 Session Laws, as amended by Chapter 128 of the 1933 Session Laws. The statute, as amended, provided in part:

"The State Highway Commission or its successor, * * * may purchase, acquire, take over or condemn under the right and power of eminent domain, for the state, any and all lands which it shall deem necessary for present public use, * * * or which it may deem necessary for reasonable future public use, * * *. It may, by the same means, secure any and all materials, including clay, gravel, sand or rock, or the lands necessary to secure such material, and the necessary land, lands or easements thereover, to provide ways and access thereto. * * *"

The last paragraph of that chapter then provides, in part:

"The State Highway Commission may vacate any land or part thereof, or rights in land which have been taken or acquired for highway purposes under the provisions of this Act by executing and recording a deed thereof, and said vacation shall revest the title

to the lands or rights so vested in the persons, their heirs, successors or assign it whom it was vested at the time of the taking. * * *"

The respondent The Federal Land Bank of Saint Paul contends that, under the provisions of Section 8204 of the 1913 Compiled Laws, now Section 32–1503 of the 1943 Revised Code, which section was in full force at the time of the taking of these tracts, the interest to be taken by eminent domain is limited to an easement when taken for any purpose other than for public buildings or grounds or for permanent buildings, for reservoirs and dams and permanent flooding occasioned thereby, or for an outlet for a flow or a place for the deposit of debris of a mine. We believe this argument is without force, however, since the State of North Dakota had no power to condemn for highway purposes prior to the enactment of Chapter 141 of the 1919 Session Laws. Prior to the enactment of that law, the power of eminent domain for highway purposes was limited to the counties. The Legislative Assembly could not have intended that the provisions of Section 8204 of the 1913 Compiled Laws, originally Section 5957 of the Revised Code of 1895 and now Section 32–1503 of the Revised Code of 1943, should be applicable in cases of the taking of land by the State by eminent domain for highway purposes, which power was first granted in 1919.

■ This court has specifically held that the title acquired by the State in taking land for highway purposes by the power of eminent domain under the provisions of Chapter 159 of the 1927 Session Laws, as amended by Chapter 128 of the 1933 Session Laws, is more than an easement. State Highway Commission v. State, 70 N.D. 673, 297 N.W. 194.

In that case, the problem facing the court was whether the state highway commission could take an easement in land which had been granted to the State of North Dakota in trust for public schools, by acquiring such easement for highway purposes. The court held that this could not be done, and pointed out that the wording of the condemnation statute contemplated not the acquisition of an easement but the acquisition of title to the land. The court, in that case, said in part:

"It is manifest from the wording of this statute that it contemplates not the acquisition of easements for rights of way or other purposes, but the acquisition of land and materials when necessary to acquire the same for highway purposes, and that the title thereto shall be taken and vested in the State." [70 N.D. 673, 297 N.W. 197.]

Thus the title acquired by the State in condemnation proceedings under Chapter 159 of the 1927 Session Laws, as amended by Chapter 128 of the 1933 Session Laws, is more than an easement. It is not, however, a fee simple absolute title. The same Act, providing for the acquisition of land or rights in land for highway purposes by condemnation, also provides that the highway commission or its successor "may vacate any land or part thereof, or rights in land which have been taken or acquired for highway purposes * * * and said vacation shall revest the title to the lands or rights so vested in the persons, their heirs, successors or assigns in whom it was vested at the time of the taking."

Whether the State should continue to use the land so acquired for highway purposes is of course discretionary with the highway commission or its successor. The statute under which these tracts were acquired, by condemnation, had a specific provision to the effect that the highway commission may vacate any land, or part thereof, or rights in land which have been taken or acquired for highway purposes under the provisions of that Act, by executing and recording a deed thereof, and such vacation shall revest the title to the land, or rights so vested, in the persons in whom it was vested at the time of taking, or their heirs, successors, or assigns.

While there is no specific provision in the statute as to when, or under what conditions, the highway commission may so vacate land or rights in land taken by condemnation and revest the title in the former owner, the language immediately following provides for a sale of the State's interests in land acquired by purchase when such interests are "deemed no longer necessary for the purposes of the Act."

■ If the provision authorizing the highway commission to vacate any land, or part of land, or rights in the land taken, gave to the highway commission the right to revest title to such land or interests in land as it should arbitrarily determine, without regard as to whether such land or interests in land were needed for highway purposes, then, in our opinion, the validity of the statute would be doubtful. Effect must be given to the whole statute and the courts, if possible, will construe statutes by giving meaning to every part of the statute rather than giving it a construction which would make part of the statute meaningless and of no effect. The whole is to be examined with a view of arriving at the true intention of each part. Cooley's Constitutional Limitations, 8th Ed., Vol. 1, p. 127.

■ This court has held that, in construing a statute, the courts should, if possible, avoid holding the statute invalid, and a construction which would make a statutory provision invalid will not be adopted when the law is susceptible of another construction which is reasonably in harmony with the apparent object sought to be accomplished by the Legislature. State ex rel. Kettle River Quarries v. Duis, 17 N.D. 319, 116 N.W. 751.

■ In examining the whole provision with reference to vacating land or part of land or rights in land with a view of arriving at the true intent of the Legislature in passing this provision, and in giving meaning to it, we are forced to the conclusion that the right to so vacate land or rights in land is limited to situations where such land or rights in land are no longer necessary for the purposes for which they were taken. Unless such intention is implied, a highway commissioner could vacate land or rights in land on mere whim or capricious notion. In construing a provision of law, it will be presumed that the Legislature, in enacting such provision, did not intend absurd or unjust consequences. Village of North Fargo v. City of Fargo, 49 N.D. 597, 192 N.W. 977.

■ In construing a statutory provision, the courts seek not only to uphold its constitutionality but endeavor to construe it so as to give effect to the legislative purpose which prompted its enactment. State ex rel. Eckroth v. Borge, 69 N.D. 1, 283 N.W. 521; Coulter v. Ramberg, 79 N.D. 208, 55 N.W.2d 516; Novak v. Novak, 74 N.D. 572, 24 N.W.2d 20. The fundamental rule of legislative construction is to ascertain and give effect to the intention of the Legislature as expressed in the statute. State ex rel. Linde v. Taylor, 33 N.D. 76, 156 N.W. 561, L.R.A.1918B 156, Ann.Cas. 1918A 583.

■ Applying these rules of construction, we are of the opinion that the statute under which these tracts were acquired must be construed as giving the highway commission the right to vacate any land so taken for highway purposes, or part thereof, or rights in such land, when such land or rights in the land are, in the discretion of the highway commission, no longer needed for the purposes for which they were taken. Therefore, while the State did acquire a fee title, it was a limited or determinable fee and not a fee simple absolute title. The title acquired by the State was subject to reverter when such land, or part thereof, or rights in land were no longer needed for highway purposes.

■ The Legislative Assembly which passed the statute providing for the taking of land by condemnation gave authority

to the highway commission to revest the title to such land, or part of such land, or rights in such land when, in the discretion of the highway commission it should be determined that such land, or part thereof, or any rights in the same were no longer needed for the purposes for which they were acquired. Surely, if the Legislative Assembly which enacted the condemnation statute had the power to vest the highway commission with authority to vacate any land or rights in land when the same no longer were needed, the Legislative Assembly itself might exercise the same power and vacate any land or rights in land which it deemed no longer necessary for such purposes. The state highway commission derived its power to vacate and to revest title in the former owners, or their successors, administrators, executors, or assigns, from the Legislature. What the Legislature had the power to authorize the highway commission to do, it surely had the power to do itself. 25 Am.Jur., Highways, Sec. 118, p. 415.

■ The appellant argues that such vacating and revesting of title to land or rights in such land in the former owner, or his successors, is contrary to Sections 20 and 185 of the North Dakota Constitution prohibiting the granting of special privilege or the making of gifts or donations to any individual. The appellant contends that Section 100 of Chapter 177 of the 1953 Session Laws, which section provides in part:

"As oil, gas and fluid minerals are not a part of and essential for highway purposes, all such rights heretofore taken, if any, are hereby vacated and returned to the person or persons in whom the title was vested at the time of taking, their heirs, administrators, executors or assigns. Such reconveyance shall be subject to any existing contracts or agreements covering such property, and all rights and benefits thereof shall accrue to the grantee. * * *";

results in making a gift to such former owner. We do not believe that such revesting of rights in lands taken, which are no longer necessary for highway purposes, would be a violation of the constitutional provisions mentioned. There can be no question that the highway commission could have, in the exercise of its discretion, determined that such rights were no longer needed for the purposes for which the land was taken. Surely the Legislative Assembly, by stepping in and doing what it had authorized the highway commission to do at the time the land was acquired, did not violate the constitutional prohibitions against granting special privilege and against making gifts or donations to individuals. The land was taken subject to such reverter. The statute under which the State acquired any title it had, provided for such revesting of title when the land or rights taken were no longer needed for highway purposes.

■ It must be presumed that the consideration paid for such lands in the condemnation proceedings, by which they were acquired, was in proportion to the estate taken. It must be further presumed that the owners received less than they would have received if such possibility of reverter had not been present. Revesting of such title to lands or to rights acquired by the State, when it was determined in 1953 by the Legislative Assembly itself that such rights were no longer needed for the purposes for which such title was acquired, was as effectual as if such revesting had been done by the highway commission. All oil, gas, and fluid-mineral rights acquired by the State when the land was taken for highway purposes were, by Chapter 177, determined not to be necessary or required for the purposes for which the land was taken. Since the statute under which the lands were condemned provided that the lands or any rights in such lands should be revested when, as we have herein determined, any of the lands or rights in lands no longer were needed for high-

way purposes, no provision of the Constitution was violated.

The Legislative Assembly, which granted to the highway commission the power to vacate lands or rights in lands taken when such lands or rights in lands no longer were needed for the purposes for which such lands were acquired, now having exercised the power to vacate certain rights in the lands taken, to wit, the right to oil, gas, and fluid minerals under such lands, by determining that such rights are not essential for highway purposes, has vacated and revested such rights in the persons in whom the title was vested at the time of taking, or their heirs, administrators, executors, or assigns.

The Act revesting such rights provides that such vacation by the State of rights in the land is subject to existing contracts or agreements covering such property. The statute specifically directs:

"Such reconveyance shall be subject to any existing contracts or agreements covering such property, and all rights and benefits thereof shall accrue to the grantee. * * *"

 We believe that the State, as owner of a determinable fee interest in such lands acquired by condemnation, had the right to execute nonoperating oil and gas leases so long as the estate of the State, which it had acquired under such condemnation proceedings, continued. The leasing of the property so taken under a nonoperating oil and gas lease is not a use inconsistent with its use for highway purposes. Therefore, any nonoperating leases executed by the State to the tracts in question, before title to oil, gas, and mineral interests were revested by action of the Legislative Assembly in 1953, were valid. The reconveyance statute specifically provides that such reconveyance was "subject to any existing contracts or agreements covering such property," and that "all rights and benefits thereof shall accrue to

the grantee." The former owner or his heirs, successors, or assigns are the grantees under such reconveyance. The rights and benefits under the nonoperating oil and gas leases, which were in effect at the time of such reconveyance of oil, gas, and mineral interests by the 1953 Legislative Assembly, therefore accrue to the former owners, their heirs, successors, and assigns.

The judgment of the district court is affirmed.

MORRIS, BURKE and TEIGEN, JJ., concur.

SATHRE, C. J., concurs in the result.