Christ WALKER, Sam Walker, Ed Schwehr, Adolph Haman, Lawrence Braun, and Robert Coyle, Plaintiffs and Respondents,

v.

M. F. PETERSON, Superintendent of Public Instruction, State of North Dakota, Defendants,

and

Calvin Hepper, Bernard Braun, Pete Feist, Mike Waliser, and William Weilenman, as members of Selfridge Public School District, Defendants and Appellants.

Civ. No. 8527.

Supreme Court of North Dakota.

April 19, 1969.

E. J. Rose, Bismarck, State's Atty. of Sioux County, for defendants and appellants, Members of the Selfridge Public School Dist.

Rausch & Chapman, Bismarck, for plaintiffs and respondents.

PAULSON, Judge.

This is an appeal from a declaratory judgment entered by the Burleigh County District Court, Honorable M. C. Fredricks, Jr., presiding. The plaintiffs, Christ Walker, Sam Walker, Ed Schwehr, Adolph Haman, Lawrence Braun, and Robert Coyle (hereinafter referred to as Walkers), brought an action asking the district court to interpret § 15–40–15 of the North Dakota Century Code, as amended in 1965. The Walkers requested the court to determine if the defendants, State Superintendent of Public Instruction M. F. Peterson, Calvin Hepper, Bernard Braun, Pete Feist, Mike Waliser, and William Weilenman, as members of the School Board of Selfridge Public School District (hereinafter referred to as School Board), are required to allow the Walker children to attend out-of-State schools and also to pay for their tuition and transportation to such out-of-State schools.

The trial court awarded judgment to the Walkers and, based upon its interpretation of § 15–40–15, N.D.C.C., as amended, determined that the Walkers were entitled to send their children to schools in South Dakota at McIntosh and McLaughlin. The trial court further determined that the School Board was obligated to pay the tuition and transportation costs, past and future, for sending these children to South Dakota schools, since, under the facts adduced at the trial, the children were entitled to attend schools in South Dakota. The School Board appealed from the judgment and demanded a trial de novo in this court.

A history of § 15–40–15, N.D.C.C., which is the statute the Walkers requested the court to interpret, follows:

In 1951 the Legislature passed an Act relating to the attendance of high school students in schools of other States, authorizing reciprocal agreements with bordering States, and providing for tuition payments. This statute read as follows:

"The superintendent of public instruction may enter into reciprocal agreements with the state educational agencies or officers of bordering states in regard to payments of tuition for high school students attending public school in a bordering state. Such agreements may provide for the payment of high school tuition for students from North Dakota attending schools in adjoining states in sums equal, on a per student basis, to payments of high school tuition received by North Dakota high schools for students from such bordering states. The superintendent of public instruction by certificate to the state auditor may authorize such tuition payments, from the appropriation from the state equalization fund for high school tuition, to schools in adjoining states for the attendance of such high school students. The payment for each student shall not exceed the tuition established by reciprocal agreement less the amounts otherwise paid for such student from state and county high school tuition funds. The auditor by voucher drawn upon the

state equalization fund shall make such payments to the appropriate public school, school district or agency of the adjoining state." (Ch. 139, S.L.N.D. 1951.)

This section was amended in 1959 and the amendment provided for several changes, including the deletion of the word "tuition" and the retention of the word "payments", but this would not affect the outcome of this action (§ 3, ch. 170, S.L.N.D.1959). This language was retained in what is now designated as § 15–40–15, N.D.C.C. Section 15–40–15 was amended in 1961 to allow the State Superintendent of Public Instruction to include elementary school students in the reciprocal agreements with bordering States (§ 2, ch. 161, S.L.N.D.1961). Section 15–40–15 was amended in 1963, which amendment basically provided that the Department of Accounts and Purchases should make the payments from the State School Aid Appropriation Fund, as authorized by the Superintendent of Public Instruction. Then in 1965 the amendment to § 15–40–15 which has given rise to the issues in this case was made (§ 1, ch. 147, S.L.N.D. 1965). The pertinent portion of the 1965 amendment to § 15–40–15 reads as follows:

"* * * Be it further provided that students *from areas historically* attending school in a bordering state and residing in a district annexed to or reorganized with another district or districts within North Dakota shall be permitted to continue attending school in a district in a bordering state." (Emphasis added.)

The original language of the bill contained the word "previously"; however, this word was deleted and the phrase "from areas historically" was inserted in lieu thereof. The determination of this case depends upon the interpretation this court attaches to the language in the amendment which reads "from areas historically". The reason this interpretation is important is that the Walkers contend that the statute, as amended, would apply to their situation, as their school districts were annexed to Selfridge Public School District and the children who attended school in the former Walker Public School District and the former Lincoln Public School District started attending schools in South Dakota in the fall of 1963. The Walkers contend that they are from a definable area and that they have historically sent their children to school in a bordering State, thus bringing themselves within the provisions of § 15–40–15, N.D.C.C., as amended in 1965. Therefore the Walkers contend that they are entitled, pursuant to this statute, to have their children attend schools in South Dakota and to have the Selfridge Public School District pay the costs of tuition and transportation.

The School Board, however, contends that § 15–40–15, N.D.C.C., as amended, does not require that the Selfridge Public School District pay for the tuition and transportation costs of the respondents' children to attend schools out of State; that the 1965 amendment to § 15–40–15 is ambiguous and that it is impossible to interpret; that nowhere does it set forth who is to decide which students have historically attended schools in South Dakota, thus bringing them within the purview of the statute; and, further, that the 1965 amendment has nothing to do with the prime purpose of the remaining portion of the statute which refers to reciprocal agreements between North Dakota and other States.

In order to determine the issues raised in this case it is also necessary to refer to the history of the areas involved. The parties involved in this lawsuit are all from Sioux County, North Dakota, which county was created in 1914, and the boundaries of which are described in § 11–01–44, N.D.C.C. The Lincoln Public School District was organized in 1915–1916, and both the Walker Public School District and the Selfridge Public School District were organized in 1924–1925.

The Walker Public School District and the Golden Wealth Public School District were annexed to the Selfridge Public School District in 1964, pursuant to § 15-22-21(2), N.D.C.C.:

"2. When any school district within the county has not operated a school for the immediately preceding two years providing fifty percent of the pupils from such school district are not attending school in another state, or  *  *  *."

Lincoln Public School District was annexed to Selfridge Public School District at approximately the same time. The annexation by Selfridge Public School District of the Walker Public School District and the Golden Wealth Public School District was contested; however, upon appeal of the litigation to this court, the annexation was held valid. Walker v. Weilenman, 143 N.W.2d 689 (N.D.1966). Although the litigation regarding annexation was not completed until 1966 the annexation became effective in August of 1964. All of the plaintiffs except Robert Coyle (who is now deceased) and Ed Schwehr live in what was formerly known as the Walker Public School District. Ed Schwehr resides in the former Lincoln Public School District and Robert Coyle had lived in what was formerly known as the Lincoln Public School District. It was conceded that previous to the annexation the Walker Public School District had not operated a school for the preceding two years but, instead, was sending its school children to other districts and paying for their transportation costs and tuition. In July of 1964, and prior to the annexation proceedings above mentioned, the Walker Public School District had entered into a 1-year tuition agreement and a 2-year transportation agreement with McIntosh School District in South Dakota. Christ Walker testified that in the school year 1964-1965, the first year that the annexation was in effect, the School Board refused to honor the agreement executed by the Walker Public School District with the McIntosh School District; however, the School Board's decision was appealed to the Sioux County committee and was reversed.

In the 1965-1966 school year, the School Board denied the Walkers' request to send their children to McIntosh; however, the county committee again reversed the School Board's decision. The county committee's decision was then appealed to the State Board of Public School Education, pursuant to § 15-40-17, N.D.C.C., and the State Board approved the arrangement for the high school children, but said that it lacked jurisdiction as to the elementary school children. The State Board refused to act because of its alleged lack of jurisdiction. It should be noted that the county committee's decision became final with reference to the elementary school children when the State Board refused to act because of its lack of jurisdiction.

In the 1966-1967 school year the Walkers again requested that they be permitted to send their children to school at McIntosh. The School Board again denied their request and an appeal was taken to the county committee, which upheld the School Board's decision. An appeal was then taken to the State Board from the county committee's decision and the State Board determined that the high school students be allowed to attend the McIntosh, South Dakota, school, and again refused to determine the status of the elementary school students because of its lack of jurisdiction under § 15-40-17, N.D.C.C.

This court must determine whether the Walkers have proven facts sufficient to bring themselves within the purview of the statutory language contained in § 15-40-15, N.D.C.C.; thus, whether they are from areas where students have historically attended schools out of State. The House Committee on Education of the 1965 North Dakota Legislative Assembly, in amending House Bill No. 700 (ch. 147, S.L.N.D. 1965), deleted the word "previously" and inserted the phrase "from areas historically" in lieu thereof. There is nothing contained in the records of this Committee

indicating what its intent was at the time this amendment was made.

Mr. E. J. Rose, State's Attorney for Sioux County and counsel for the School Board in the instant case, requested an opinion from the Attorney General on September 9, 1965, in regard to an interpretation of the words "students", "areas", and "historically", as they are used in the statute at issue. The Attorney General stated that he was of the opinion that the word "areas" as used in the statute was intended to be synonymous with an entire district, and that:

"With respect to the word 'historically' the statute is apparently primarily concerned with the area or district at the time it is attached, by reorganization or annexation, to another district or districts. We therefore believe the word 'historically' could be said to refer to the school year immediately preceding the date of annexation or reorganization with another district during which students from such district were attending school. However we are also aware that the term can be construed to mean more than the year immediately preceding annexation or reorganization during which students from the district were attending school. In this sense the question of the definition of the word 'historically' is a question of fact to be determined in each specific instance and is a question which this office cannot and will not answer.

"In direct reply to your questions:

"1. It is our opinion that by the use of the word 'students' the Legislature meant one or more students.

"2. It is our opinion the word 'areas' refers to the original districts which have been attached to an adjoining district or districts.

"3. While we believe the year immediately preceding attachment to an adjoining district or districts during which students from the district were attending school must be given con-

siderable weight in determining this question, this office cannot and will not determine the exact significance of this word [historically] since it necessarily involves a question of fact to be determined from all circumstances in a given situation.

"4. It is our opinion the statute refers to the area or original district from which students were attending school in a bordering state and not to the individual students who might have been attending school in a bordering state." (N.D. Atty. Gen. Rep. to the Governor, July 1, 1964, to June 30, 1966, pp. 246–247.)

Thus the Attorney General was of the opinion that the definition of the word "historically" involves a question of fact which must be determined from all the circumstances in a given situation.

The decision in this case depends upon the interpretation of the phrase "from areas historically", and whether the Walkers have shown that they produced facts sufficient to bring themselves within this definition. "Historically" has been defined as:

"* * * in accordance with or in respect to history * * * in the course of history: in past times or previous dealings. * * *" (Webster's Third New International Dictionary (Unabridged 1967), p. 1073.)

"Historical" has been defined as:

"* * * based on, resulting from, or acknowledged to be true because of past events or experiences. * * *" (Webster's, *supra*),

and

"* * * relating to the past. * * *" (Funk & Wagnall's New Standard Dictionary (1963), p. 1163.)

156

"History" has been defined as:

"* * * past events * * * previous treatment, handling, or experience. * *" (Webster's, *supra* at 1074),

and as

"* * * dealing with past events * * * record of past events. * * *" (The Synonym Finder, Rodale (1965), p. 532.)

It is thus evident that "history", or "historical", or "historically", relates to the past, but there is no exact definition as to the period of time which must elapse before past events become history, i. e., one day or ten years. In United States v. Fallbrook Public Utility District, 109 F.Supp. 28, 78 (1952), counsel stipulated that, for the purposes of that case:

"* * * The term 'historically', as used herein, is defined to mean 'at some time or times in the past'".

However, such stipulation is not of particular assistance in the instant case.

The record indicates that Christ Walker first sent his children to school in McIntosh, South Dakota, in the fall of 1963, at which time the now-defunct Walker Public School District was in existence but had discontinued operating a school within its district. Christ Walker also testified that the area, in which all except two of the plaintiffs lived, includes "a little better than the southwest quarter of the old Walker School District", which area is included on Plaintiffs' Exhibit 1 (being a North Dakota 1967 Official Highway Map, 50th Anniversary Issue). Ed Schwehr lives in the old Lincoln Public School District, and Robert Coyle had lived there prior to his death. The record indicates that Lincoln Public School District was located west of Walker Public School District, and all of the plaintiffs lived within a general area. The record further reveals that the Walkers, except for Ed Schwehr, sent their children to South Dakota schools for the school year 1963–1964; and, in the school year 1964–1965, Ed Schwehr began sending his children to a South Dakota school.

The School Board contends that the testimony of the Walkers was not "historical" but rather that they desired their children to attend an accredited school; further, that the Sam Walker children, the Christ Walker children, and the children of patrons involved in this action had attended schools either at Walker Public School District or Lincoln Public School District until the respective schools voluntarily closed; that the patrons were aware that at the end of a 2-year period there would be an annexation pursuant to the statute. The Walkers urge, to the contrary, that the word "historically" should be interpreted to mean a period of one or two years, and that such a period of time as the evidence reveals should be employed and should serve the same purpose as a period of time encompassing a generation. In addition, the Walkers argue that the students' attendance at the larger South Dakota schools because of better facilities provided and broader curriculums offered was in explanation of the phrase "from areas historically".

■ The intent of a Legislature is often revealed by being specifically set forth in a statute. In the statute involved in this case no such intent is specifically included. House and Senate Journals sometimes reveal the purposes for legislative enactments. Since in this case there is nothing in the legislative committee records concerning the meaning of the word "historically" in § 15–40–15, N.D.C.C., as amended, it is necessary for this court to judicially define this particular phrase "from areas historically". This court may take judicial notice of certain matters, such as are set forth in subsections 41, 53, 63, and 77 of § 31–10–02, N.D.C.C., which read as follows:

"41. Of the official acts of public officers;

"53. Of the occurrences and the times of such occurrences which constitute the history of this state and of the United States;

"63. Of the constitution of the United States and the public laws of this state;

"77. Of such contemporaneous history as led up to and probably induced the passage of a law;"

Certainly a 2-, or 4-, or 5-year period is not a sufficient length of time to establish a pattern to be designated as having attended "from areas historically". The word "historically" would involve sending children to a school or schools for a greater length of time than is revealed by this record, which we will hereafter discuss. Mr. Christ Walker's testimony discloses that in no instance was there attendance by the pupils to exceed five years, the first two of which were occasioned by the voluntary closing of schools and the subsequent annexation of these districts to Selfridge Public School District. The following are excerpts of Christ Walker's testimony:

"Q. [by Mr. Chapman] All right. Can you tell the Judge then what year it was that you first sent students to the McIntosh, South Dakota public schools? [Tr. 7, lines 23–25.]

"A. In the fall of 1963.

"Q. Now at that time state whether or not there was a Walker Public School District?

"A. Yes.

"Q. There was such a District?

"A. Yes. [Tr. 8, lines 1–6.]

"Q. Can you state what year the reorganization occurred, and the month, if you can recall? Excuse me: I meant the annexation proceeding. When were you dissolved and annexed to the Selfridge School District?

"A. That would have been in August of 1964. Am I correct there?

"Q. August, 1964?

"A. Yes. [Tr. 8, lines 17–24.]

"Q. All of the rest of the children went to McIntosh, South Dakota?

"A. Yes.

"Q. And has that prevailed from 1963 up until the present time?

"A. Yes, with the exception that one of the plaintiffs the next year sent all of his children along with the McIntosh bus to McIntosh and is doing so at the present time.

"Q. What plaintiff?

"A. Ed Schwehr." [Tr. 14, lines 7–15.]

The testimony of Braun and Haman corroborates the testimony furnished by Christ Walker concerning the time that Walker Public School District was closed. The School Board further urges that the evidence offered by the witness, George Schaeffer, was not material, in that Schaeffer is not a party to this action nor was he a patron of any of the dissolved districts, because his children commenced their schooling in the 1967–1968 school year. Such testimony would not buttress an assertion that a patron "historically" attended school and will not be considered as determinative of the definition of the phrase "from areas historically" as set forth in the statute. We may take judicial notice of the facts that the area has been settled for a period in excess of sixty years, and that there were educational facilities which were an integral part of the area since the time it was organized as Sioux County. Although the word "historically" might well refer backward in time to the establishment of the school district, without deciding the period of time that would be required to satisfy the meaning of the word "historically", we hold in the instant case that the period of time

during which the students from the areas involved in this case attended schools in South Dakota was an insufficient period of time to come within the meaning of the word "historically".

For the reasons stated in the opinion, the judgment of the district court is reversed and the plaintiffs' complaint is ordered dismissed.

ERICKSTAD, STRUTZ and KNUDSON, JJ., concur.

TEIGEN, Chief Justice (specially concurring).

I agree to a dismissal of the action but for different reasons than those stated by the majority. The plaintiffs, by this action, seek a declaratory judgment under the provisions of Chapter 32–23, N.D.C.C. The plaintiffs seek judgment, declaring that Section 15–40–15, as amended in 1965, applies in their case. It provides:

"The superintendent of public instruction may enter into reciprocal agreements with the state education agencies or officers of bordering states in regard to the attendance of elementary and high school pupils in a bordering state and payments from the county equalization fund for high school and elementary students attending public schools in a bordering state and payments from the county equalization fund for high school and elementary students attending public schools in a bordering state. Such agreements may provide for the payment from the county equalization fund for students from North Dakota attending schools in adjoining states in sums equal, on a per student basis, to payments from the county equalization fund received by North Dakota schools. The superintendent of public instruction by certificate to the department of accounts and purchases may authorize such payments, from the appropriation for state school aid to the county equalization fund, to schools in adjoining states for the attendance of such high school and elementary students. The payment by the district of residence for each student shall not exceed the payments established by reciprocal agreement less the amounts otherwise paid for such student under the provisions of this chapter. The department of accounts and purchases, within the limits of legislative appropriation, shall make such payments to the appropriate public school, school district or agency of the adjoining state. Such reciprocal agreements may include but shall not be limited to payments for tuition and transportation costs connected with the education of such children in bordering states. *Be it further provided that students from areas historically attending school in a bordering state and residing in a district annexed to or reorganized with another district or districts within North Dakota shall be permitted to continue attending school in a district in a bordering state.*" [Emphasis supplied.]

The italicized part of the above statute was added by amendment in 1965. The remaining part of the statute was reenacted without change. The amendment must be construed in relation to the subject matter of the statute and must be read in a sense which harmonizes it with the subject matter. The original text of the statute was not changed by the addition in 1965. The addition making no change in the original text must be considered as supplemental to the original text but as being related thereto. Its function, it appears to me, is to grant a student attending school in a bordering state permission to continue attending school in the bordering state when, as a result of annexation or reorganization, the school district in which he is residing has been dissolved in whole or in part and annexed to or reorganized with another school district, and there exists a reciprocal agreement providing for the payment of the charges for his attendance at the school in the bordering state. This is the clear import of the statute as amended

when construed as a whole. The majority has construed the word "historically" as meaning a period of time consisting of more than three years. I do not think the term is used in that sense. I believe it is used in the present tense with reference to past times or previous dealing, as defined in Webster's Third New International Dictionary, wherein the following definition is given: "in the course of history: in past times or previous dealings."

In construing statutes we must seek to ascertain the intent of the Legislature and should not adopt a construction that will nullify or defeat the legislative intent. Coulter v. Ramberg, 79 N.D. 208, 55 N.W. 2d 516.

Where language of a statute is of doubtful meaning or adherence to the strict letter. thereof would lead to injustice or absurdity or result in contradictory provisions, the court must ascertain the true meaning thereof. State for the Benefit of Workmen's Compensation Fund v. E. W. Wylie Co., 79 N.D. 471, 58 N.W.2d 76; Rybnicek v. City of Mandan, N.D., 93 N.W. 2d 650. I agree with the majority that the statute is ambiguous and that the draftsmanship of the supplementary language leaves much to be desired. However, if I accept the construction placed upon it by the majority, that time is measured from some date in the past, it becomes an absurdity and would lead to injustice. When I consider that part of the statute supplemented by amendment in 1965 in the light of the original text of the statute and take into consideration the fact that policy changes may occur as a result of a territory being placed under the jurisdiction of a new and different school board as a result of annexation or reorganization procedure, the intent of the Legislature, in adopting the amendment, becomes clear. I believe it was the intent of the Legislature to permit a student who was attending a particular school to continue attending such school, and that such student should not be subjected to the requirement that he attend another school at the whim of another school board which acquired jurisdiction of the territory in which the student resides, as a result of annexation or reorganization procedure. Thus, I believe it was the intent of the Legislature to provide that where all or part of the territory of a school district, by annexation or reorganization, becomes a part of another district or of a new district, subject to the jurisdiction and control of another school board, the students residing in such territory who were attending school in a bordering state prior to such annexation or reorganization procedure, are granted permission, by law, to continue attending the same school and that the decision is at the discretion of the student, and not of the school board, provided the reciprocal agreement is in force. In other words, the statute creates a personal privilege to the student which he may exercise under the law. The statute, however, limits the granting of permission to attend schools in a bordering state to those students, residing in a school district which is annexed to or reorganized with another school district or districts, who have a history of having attended such schools. That part of the statute, supplemented by the 1965 amendment, is written in the present tense. The word "historically" adds the time element but does not prescribe a period of time to be measured from a commencement date in the past, but rather has reference to time measured back from the present. The phrase is "historically attending" and should be construed as being used in the present tense, telling of past events. The words "from areas" can have no meaning, as areas do not attend school.

In spite of my disagreement with the reasoning of the majority, I nevertheless conclude that the action must be dismissed. The reason therefor is that the record in this action does not establish that a reciprocal agreement between North Dakota and South Dakota was in existence, as required by the statute to make the amendment applicable. A justiciable issue must be presented where declaratory relief is sought. In Iverson v. Tweeden, N.D., 48 N.W.2d 367; Great Northern Ry. Co. v. Mustad,

76 N.D. 84, 33 N.W.2d 436; and Langer v. State, 69 N.D. 129, 284 N.W. 238; we quoted with approval the following passage from State ex rel. LaFollette v. Dammann, 220 Wis. 17, 264 N.W. 627, 103 A.L.R. 1089:

"The requisite precedent facts or conditions which the courts generally hold must exist in order that declaratory relief may be obtained may be summarized as follows: (1) there must exist a justiciable controversy; that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it; (2) the controversy must be between persons whose interests are adverse; (3) the party seeking declaratory relief must have a legal interest in the controversy, that is to say, a legally protectible interest; and (4) the issue involved in the controversy must be ripe for judicial determination."

The plaintiffs having failed to establish that a reciprocal agreement was in existence, it appears to me that to render a decision on the question presented may result in an advisory opinion, contrary to the objects and purposes of the Declaratory Judgments Act. Langer v. State, 69 N.D. 129, 284 N.W. 238; Asbury Hospital v. Cass County, 72 N.D. 359, 7 N.W.2d 438; Ginakes v. Johnson, 75 N.D. 164, 26 N.W. 2d 368; Iverson v. Tweeden, N.D., 48 N.W.2d 367; Park District City of Fargo v. City of Fargo, N.D., 129 N.W.2d 828.